# INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, ET AL. *v.* HECHLER

No. 85–1360.   Argued January 20, 1987—Decided May 26, 1987

852

BLACKMUN, J., delivered the opinion of the Court, in which REHN-QUIST, C. J., and BRENNAN, WHITE, MARSHALL, POWELL, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 865.

*Laurence Gold* argued the cause for petitioners. With him on the briefs were *David M. Silberman, Laurence J. Cohen, Elihu I. Leifer,* and *Richard M. Resnick.*

*Joel S. Perwin* argued the cause for respondent. With him on the brief was *Sheldon J. Schlesinger.*

JUSTICE BLACKMUN delivered the opinion of the Court.

In *Allis-Chalmers Corp.* v. *Lueck,* 471 U. S. 202 (1985), this Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of

an agreement made between the parties in a labor contract," the plaintiff's claim is pre-empted by § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185. 471 U. S., at 220. The question presented by this case is whether a state-law tort claim that a union has breached its duty of care to provide a union member with a safe workplace is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301.

## I

At all times relevant to this case, plaintiff-respondent Sally Hechler was employed by Florida Power and Light Company (Florida Power) as an electrical apprentice. Petitioners, the International Brotherhood of Electrical Workers and its Local 759 (collectively referred to as the Union), are the exclusive bargaining representatives for the bargaining unit in which respondent was employed. On January 11, 1982, Florida Power assigned respondent to a job in an electrical substation that required her to perform tasks she alleges were beyond the scope of her training and experience. Shortly after commencing her new assignment, respondent was injured when she came into contact with highly energized components at the substation.

Two years later, respondent sued the Union in state court in Broward County, Fla. In her complaint, she alleged that "pursuant to contracts and agreements entered into by and between" the Union and Florida Power, and "pursuant to the relationship by and between" the Union and respondent, the Union had a duty to ensure that respondent "was provided safety in her work place and a safe work place," and to ensure that respondent "would not be required or allowed to take undue risks in the performance of her duties which were not commensurate with her training and experience." App. 4. The Union, pursuant to 28 U. S. C. § 1441, removed the lawsuit to the United States District Court for the Southern District of Florida on the grounds that the "alleged duty arises

solely from the alleged collective bargaining agreement between [the Union] and Florida Power," and therefore that any breach of this duty was actionable under § 301. 1 Record 3. Respondent at that time raised no objection to the removal.

In federal court, the Union moved to dismiss the complaint. It argued that respondent's claim arose solely under federal labor law and was untimely under the applicable federal statute of limitations. *Id.*, at 66–70. Respondent conceded: "The nature and scope of the duty of care owed [her] is determined by reference to the collective bargaining agreement." *Id.*, at 98. She argued, however, that the basic nature of her action was a state common-law "suit in tort" for the Union's negligence in failing to provide her a safe workplace. *Id.*, at 100–102. Respondent prayed that the case be remanded to the state court.

The District Court granted the Union's motion to dismiss. The court observed that the gravamen of the complaint was that the Union had breached a duty of care to respondent to provide her a safe workplace. "Significantly, the duty allegedly owed to [Hechler] flows from the collective bargaining agreement, which imposes a duty on the [Union] to monitor the safety and training of its members." App. to Pet. for Cert. 3a. The court concluded that because respondent had failed "to demonstrate that the [Union's] allegedly negligent activity was unrelated to the collective bargaining agreement or beyond the scope of the employee-union fiduciary relationship," her claim was pre-empted by federal labor law. *Id.*, at 4a. Having found that respondent's suit was governed by federal law, the court then held that the 6-month statute of limitations adopted in *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983), applied to Hechler's case, and dismissed the suit as untimely.

The Court of Appeals for the Eleventh Circuit reversed. 772 F. 2d 788 (1985). It ruled that the complaint "on its face states a common law negligence claim that may be cognizable

in state court and is not preempted by the federal labor laws." *Id.*, at 790–791. The court concluded: "Though the [collective-bargaining] contract may be of use in defining the scope of the duty owed, liability will turn on basic negligence principles as developed by state law." *Id.*, at 794. Finding that "federal labor law was not invoked in plaintiff's complaint," *id.*, at 799, the court directed that the District Court remand the case to the state court for adjudication on the merits.

Because the Eleventh Circuit's decision appeared to conflict with the decision of the Sixth Circuit in *Michigan Mutual Ins. Co.* v. *Steelworkers*, 774 F. 2d 104 (1985), we granted certiorari. 476 U. S. 1113 (1986).

## II

### A

In *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202 (1985), we reviewed the pre-emptive scope of § 301.[1] We think it useful, at the outset, to repeat briefly the background outlined in the opinion in *Allis-Chalmers*. In *Textile Workers* v. *Lincoln Mills*, 353 U. S. 448 (1957), the Court held that § 301 does more than simply confer jurisdiction on federal courts to hear suits charging violations of collective-bargaining agreements. *Id.*, at 450–451. The Court concluded that Congress, through § 301, had authorized federal courts to create a body of federal law for the enforcement of collective-bargaining agreements — law "which the courts must fashion from the policy of our national labor laws." *Id.*, at 456. It was explained in *Allis-Chalmers*, 471 U. S., at

---

[1] Section 301 of the Labor Management Relations Act, 1947 (LMRA) states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U. S. C. § 185(a).

209, that the Court in *Lincoln Mills* "understood § 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."

Not long after *Lincoln Mills* was decided, the Court held that state courts have concurrent jurisdiction over § 301 claims. *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962). Although the Court in *Dowd* proceeded upon the hypothesis that state courts would apply federal law when they exercised jurisdiction over § 301 claims,[2] it was in another case that same Term, *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95 (1962), that the Court expressly held that federal law, and not state law, must be used in adjudicating § 301 claims. There the Court observed: "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." 369 U. S., at 103. The need for this uniformity was clearly explained:

> "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal sys-

---

[2] See *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95, 102 (1962), discussing *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962). In *Dowd*, the Court impliedly referred to state courts as working with the federal courts "as there evolves in this field of labor management relations that body of federal common law of which *Lincoln Mills* spoke." *Id.*, at 514.

tems would tend to stimulate and prolong disputes as to its interpretation." *Id.*, at 103–104.

The Court thus concluded that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.*, at 104.

While the Court in *Lucas Flour* observed that federal law was paramount in "the area covered by" § 301, 369 U. S., at 103, in *Allis-Chalmers* the Court defined the range of claims that should be considered as coming within that coverage. The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated. See, *e. g.*, *Lucas Flour*, 369 U. S., at 104 (claim by employer that strike by union violated provision of collective-bargaining agreement). In *Allis-Chalmers*, however, the Court considered an employee's state-law tort action against his employer for bad-faith handling of disability-benefit payments due under a collective-bargaining agreement, and concluded that the interests supporting the uniform interpretation of collective-bargaining agreements under federal common law apply equally in the context of certain state-law tort claims. The Court set forth this basic principle:

> "The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as

claims for tortious breach of contract." 471 U. S., at 211.

The Court pointed out that if state law, in the context of a tort action, were allowed to determine the meaning of particular contract phrases or terms in a collective-bargaining agreement, "all the evils addressed in *Lucas Flour* would recur"; the "parties would be uncertain as to what they were binding themselves to" in a collective-bargaining agreement, and, as a result, "it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate." *Ibid.*

In *Allis-Chalmers*, the Court applied the rule that a tort claim "inextricably intertwined with consideration of the terms of the labor contract" is pre-empted under § 301, 471 U. S., at 213, and concluded that the claim in *Allis-Chalmers* fell within that category. The employee's allegation there was that his employer and its insurance company intentionally had failed to make required disability payments under a plan negotiated in a collective-bargaining agreement, and that, in so doing, they had breached a state-law insurance duty to act "in good faith" in paying disability benefits. *Id.,* at 206. The Court observed that any attempt to assess liability on the part of the employer would inevitably involve interpretation of the underlying collective-bargaining contract. First, the disability plan adopted in the collective-bargaining agreement might itself have included an implied requirement of good faith that the employer breached by its conduct. The Court explained: "[I]t is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis-Chalmers' conduct breached that implied contract provision." *Id.,* at 215. Second, under the relevant state law, the duty of "good faith" on which the plaintiff relied "intrinsically relate[d] to the nature and existence of the contract." *Id.,* at 216. The concept of "good faith" meant " 'being faithful to one's duty or obliga-

tion,'" *ibid.*, quoting *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1, 13, 235 N. W. 413, 414 (1931), and, under state law, that duty was determined primarily by analyzing the responsibilities agreed to by the insurer in the written contract. The Court reasoned: "Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." 471 U. S., at 218. Inasmuch as federal law must control the uniform meaning given to contract terms in a collective-bargaining agreement, however, an employee's state-law tort action that necessarily rests on an interpretation of those terms is pre-empted by § 301. *Id.*, at 218–219.[3]

## B

Under the principle set forth in *Allis-Chalmers*, we must determine if respondent's claim is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301. Respondent's state-law tort claim is based on her allegation that the Union owed a duty of care to provide her with a safe workplace and to monitor her work assignments to ensure that they were commensurate with her skills and experience. Under the common law, however, it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace. See, *e. g.*, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on The Law of Torts 569 (5th ed.

---

[3] The Court took care in *Allis-Chalmers* to define the precise limits of its holding. The rule there set forth is that, when a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim. 471 U. S., at 220. The Court emphasized, however: "In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.*, at 212.

1984); *White* v. *Consolidated Freight Lines*, 192 Wash. 146, 148, 73 P. 2d 358, 359 (1937). Under Florida case law, as under the general common law, the employer "owes a duty to his employees to furnish a reasonably safe place to work, and must use ordinary care and diligence to keep it safe." 2 Fla. Jur. 2d, Agency and Employment § 154, p. 343 (1977) (footnote omitted); see, *e. g.*, *Putnam Lumber Co.* v. *Berry*, 146 Fla. 595, 604–607, 2 So. 2d 133, 137–138 (1941). See also Fla. Stat. § 440.56(1) (1981) ("Every employer . . . shall furnish employment which shall be safe for the employees therein, furnish and use safety devices and safeguards . . . and do every other thing reasonably necessary to protect the life, health, and safety of such employees").

Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement. If a party breaches a contractual duty, the settled rule under Florida law is that the aggrieved party may bring either an action for breach of contract or a tort action for the injuries suffered as a result of the contractual breach. See, *e. g.*, *Banfield* v. *Addington*, 104 Fla. 661, 669–670, 140 So. 893, 897 (1932); *Parrish* v. *Clark*, 107 Fla. 598, 603, 145 So. 848, 850 (1933) ("[A]n action may arise for the breach of the contract, or for the positive tort committed by the violation of a duty arising out of the assumption of the contractual relation"); *Safeco Title Ins. Co.* v. *Reynolds*, 452 So. 2d 45, 48 (Fla. App. 1984) (it is a "long-established general principle that injuries caused by the allegedly negligent performance of a contractual duty may be redressed through a tort action"). The threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties. See 38 Fla. Jur. 2d, Negligence § 17, p. 29 (1982); *Vorndran* v. *Wright*, 367 So. 2d 1070 (Fla. App. 1979) (architect's contract did not include a duty to ensure compliance with safety regulations and thus employee injured on the job had no cause of action

against the architect); *Schauer* v. *Blair Construction Co.*, 374 So. 2d 1160, 1161 (Fla. App. 1979) (summary judgment in favor of architect improperly granted when genuine issue of material fact existed regarding architect's alleged contractual obligation to supervise construction).

In her complaint, respondent alleges precisely this type of tortious breach-of-contract claim. She asserts that "pursuant to contracts and agreements" between the Union and Florida Power, "to which contracts and agreements the Plaintiff was a third-party beneficiary," the Union owed respondent a duty of care to ensure her a safe working environment. App. 4. Having assumed this duty under the collective-bargaining agreement, the Union—according to the complaint—was then negligent "by allowing [Hechler] to be assigned to work in . . . a dangerous location and environment and by failing to provide her with or ascertaining that she had the necessary training, experience, background, and education to work in such a dangerous environment," and was further negligent in failing to "provid[e] and/or enforc[e] safety rules, regulations and requirements which would preclude such persons with inadequate and insufficient background, training, education, and experience, such as the Plaintiff, . . . from being placed in such an inherently dangerous working environment." *Id.*, at 5.

Respondent's allegations of negligence assume significance if—and only if—the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached. The collective-bargaining agreement between the Union and Florida Power, and ancillary agreements between those parties, contain provisions on safety and working requirements for electrical apprentices on which Hechler could try to base an argument that the Union assumed an implied duty of care.[4]

---

[4] The provision on "Safety" in the collective-bargaining agreement reads:

"The safety of the employees is a matter of paramount importance, shall receive first consideration, and no employee shall be allowed or required to

In order to determine the Union's tort liability, however, a court would have to ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union to ensure that Hechler was provided a safe workplace, and, second, the nature and scope of that duty, that is, whether, and to what extent, the Union's duty extended to the particular responsibilities alleged by respondent in her complaint. Thus, in this case, as in *Allis-Chalmers*, it is clear that "questions of contract interpretation . . . underlie any finding of tort liability." 471 U. S., at 218. The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in *Allis-Chalmers*, respondent is precluded from evading the preemptive force of § 301 by casting her claim as a state-law tort action.[5]

---

take any undue risk in the performance of his duties which he or his Foreman or Supervisor consider unsafe to himself or to his fellow workers. Supervisors and Foreman will be held strictly responsible for the enforcement of safe working rules." App. 13–14.

The provision also establishes a labor-management "Joint Safety Committee" which is "responsible for developing and recommending an effective safety program for all employees covered by this Agreement, including changes or additions to present safety rules, conducting investigations of accidents when deemed necessary." *Id.*, at 14.

A second provision, present in a side agreement entitled "The Manner An Electrical Apprentice Will Work" states:

"It is recognized that an Electrical Apprentice is in training under Journeymen to become a qualified Journeyman. It is also recognized that as he progresses in his apprenticeship, he becomes qualified to perform productive work, and will be expected to perform all the duties of a Journeyman which he has become qualified to do. It is not the intention of the Company to use an Apprentice on any type of work which the Apprentice has not become qualified to perform through experience and training. In this regard, the Company will not require an Apprentice to work on, climb through or work above energized conductors carrying more than 500 volts during his first year of apprenticeship." *Id.*, at 17.

[5] In her brief to this Court, respondent argues, for the first time, that her claim is not dependent on an interpretation of the collective-bargaining agreement, because the Union's duty of care to her may arise through inde-

## III

If respondent's suit is treated as a § 301 claim, a court must determine whether her claim is time barred by the applicable

pendent state-law responsibilities placed upon the Union simply by virtue of its relationship with its members, rather than as a result of the collective-bargaining agreement.   Brief for Respondent 15–19.   Respondent points out that she alleged that the Union owed her a duty of care "pursuant to contracts and agreements" entered into between the Union and Florida Power "*and* pursuant to the relationship by and between" the Union and Hechler.   App. 4 (emphasis added).

Even assuming that respondent's pleadings may be construed liberally as stating that various, unenumerated Florida laws place a duty of care on a union to provide a safe workplace for its members, respondent effectively abandoned that theory in the lower courts and we decline to consider the argument here.   Hechler argued below simply that the Union's duty of care arose from and was determined by the collective-bargaining agreement to which she was a third-party beneficiary.   In opposing the Union's motion to dismiss in the District Court, Hechler conceded: "The nature and scope of the duty of care owed Plaintiff is determined by reference to the collective bargaining agreement."   1 Record 98.   She made no reference to an alternative theory that the "nature and scope" of the Union's duty of care also may be determined by reference to state law operating independently of the collective-bargaining agreement.   Although she repeated her statement that the duty of care owed her by the Union arose "by virtue of the parties [sic] relationship and the collective bargaining agreement," *ibid.*, she never suggested that the "relationship" between the parties gave rise to a duty of care distinct from the duty created by the collective-bargaining agreement.   Not surprisingly, the District Court, relying on Hechler's formulation of her claim, observed: "Significantly, the duty allegedly owed to plaintiff flows from the collective bargaining agreement." App. to Pet. for Cert. 3a.

On appeal to the Court of Appeals, Hechler continued to characterize the Union's duty of care as grounded in the collective-bargaining agreement. She described the issue presented as "whether the federal labor laws preempt a worker's state common-law action against her union for negligence in breaching its duty—*created by the union's contract with the employer*—to insure that the plaintiff was properly trained for her work assignment." Brief for Appellant in No. 84–5799 (CA11), p. ii (emphasis added).   See also *id.*, at 1, 45, n. 47.   Again, there was no mention by Hechler of the existence of other state law that might form an alternative source of the Union's duty.   The Court of Appeals accepted the proposition that the Un-

statute of limitations under federal law. The Union argues that respondent's claim can be characterized only as a "duty of fair representation" claim against the Union for failing properly to represent Hechler's interests before the employer, and that her claim must therefore be governed by the 6-month period of limitations prescribed by *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983).[6] Respondent argues, however, that her suit is not a "duty of fair representation" claim, but is simply a § 301 claim, on the basis of her status as a third-party beneficiary of the collective-bargaining agree-

---

ion's duty of care would arise from the collective-bargaining agreement, but agreed with Hechler that, "[t]hough the contract may be of use in defining the scope of the duty owed," the suit essentially remained a state-law claim of negligence. 772 F. 2d 788, 794 (1985).

Respondent repeated the theory adopted by the Court of Appeals in her opposition to the Union's certiorari petition in this Court. Brief in Opposition 4, 8–9. In her brief on the merits to this Court, she argued for the first time that the Union possibly was subject to an independent state-law duty of care, unconnected to the collective-bargaining agreement, and arising simply from the relationship of a union to its members. Even if such a state-law obligation, which would directly regulate the responsibility of a union in a workplace, could survive the pre-emptive power of federal labor law, we conclude that it is too late in the day for respondent to present to the Court this newfound legal theory. We decline to rule on the impact of hypothetical state law when the relevance of such law was neither presented to or passed on by the courts below, nor presented to us in the response to the petition for certiorari.

    [6] In *DelCostello*, the Court concluded that a hybrid suit, consisting of a § 301 claim against an employer and a duty-of-fair-representation claim against a union, is similar to an unfair labor practices charge, and that federal courts should therefore borrow the 6-month limitations period established in § 10(b) of the National Labor Relations Act, 29 U. S. C. § 160(b), for such charges. A duty-of-fair-representation claim arises when a union that represents an employee in a grievance or arbitration procedure acts in a "discriminatory, dishonest, arbitrary, or perfunctory" fashion. 462 U. S., at 164. See *Vaca* v. *Sipes*, 386 U. S. 171 (1967); *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554 (1976). The Court in *DelCostello* expressly distinguished the hybrid § 301/duty-of-fair-representation claim before it from "a straightforward breach-of-contract suit under § 301." 462 U. S., at 165.

ment and the Union's breach of duties assumed under that agreement.[7]

The Court of Appeals did not review the District Court's holding that the 6-month period of limitations adopted in *DelCostello* governs Hechler's suit, because it concluded that respondent's claim was not pre-empted under federal labor law. We believe it appropriate for the Court of Appeals to consider, in the first instance, whether the period of limitations adopted in *DelCostello* is applicable to Hechler's claim.

The judgment of the Court of Appeals for the Eleventh Circuit therefore is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in part and dissenting in part.

Respondent has alleged nothing more than a breach of the Union's federal duty of fair representation. She has not alleged that the Union breached any specific promise made to her, and her argument that Florida law has augmented the Union's representational duties is plainly pre-empted by federal law. The suggestion that she is a "third-party beneficiary" of the collective-bargaining agreement that the Union negotiated and executed on her behalf is a concept I simply do not understand. Whatever rights she has under that contract are rights against her employer, not against the party that represented her in its negotiation. Since her claim

---

[7] An individual employee may bring a § 301 claim against an employer for violation of the collective-bargaining agreement between the union and the employer. *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962). Although employees usually bring duty-of-fair-representation claims against their union rather than § 301 claims, see, *e. g.*, *Vaca* v. *Sipes, supra*, third-party beneficiaries to a contract ordinarily have the right to bring a claim based on the contract. The Union has not contested respondent's right to bring a § 301 claim against it based on her status as a third-party beneficiary to the collective-bargaining agreement, although it has attempted to recast her suit as a duty-of-fair-representation claim.

against the Union is a duty-of-fair-representation claim, her complaint is barred by the 6-month period of limitations prescribed by this Court's decision in *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983).\* Remanding the case to the Court of Appeals is therefore unnecessary. I would simply reverse the judgment of the Court of Appeals and reinstate the District Court's order dismissing the complaint.

---

\*The District Court found that respondent had sued the union "over two years after she sustained her injury." App. to Pet. for Cert. 5a.