James SAMS, Plaintiff,

v.

UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC, et al., Defendants.

Jimmie ORR, Plaintiff,

v.

UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC, et al., Defendants.

Civ. A. Nos. 486–211, 486–221.

United States District Court, S.D. Georgia, Savannah Division.

March 23, 1988.

W. Paschal Bignault, Cletus W. Bergen, Savannah, Ga., for plaintiffs.

Stanley Karsman, Savannah, Ga., for Intern.

James D. Fagan, Atlanta, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

Plaintiffs, James Sams and Jimmie Orr, claim damages from their union, United Food & Commercial Workers International Union, AFL–CIO, CLC, and its Locals Nos. 433 and 442 ("the Unions"), arising out of injuries sustained at work. Defendants move for summary judgment based on the

statute of limitations. Because the Court concludes that the six-month statute of limitations of 29 U.S.C. § 160(b) applies to these particular actions, defendants' motion will be granted.

## BACKGROUND

Plaintiffs were severely injured when a vegetable oil boiler exploded at work on May 17, 1984. In May 1986, they brought suit in state court against several defendants, including their Unions and their employers, Hunt–Wesson, Inc., and Esmark, Inc. The complaints allege, *inter alia*, a breach of duty of care by the Unions and a conspiracy to create a hazardous workplace. Regarding the Unions, each complaint states:

### 21.

Defendants INTERNATIONAL UNION and LOCAL UNION # 433 and LOCAL UNION # 442 had the duty and/or by and through the actions of their employees, officers and agents affirmatively undertook the duty to:

(a) ensure the Plaintiff's workplace was safe; and/or

(b) determine Plaintiff's fitness to confront and work with the dangers inherent in his job to which he had been assigned; and/or

(c) determine that qualified individuals were watching the temperature guages [*sic*] and/or other equipment needed to ensure the safety of Plaintiff while he was working ...; and/or

(d) ensure that a safe process was used for the boiling off of excess water in the oil bleaching process described herein that was used by Plaintiff on a regular basis; and/or

(e) ensure that properly trained and qualified individuals made the decisions as to what process or processes would be used in bleaching "blow down" oil; and/or

(f) properly train its members and Plaintiff herein in the area of bleaching water from the oil as previously described herein, prior to allowing its union members, and specifically Plaintiff herein, to conduct such an operations [*sic*]; and/or

(g) ensure that all safety appliances are constructed in a safe and proper manner by competent mechanics and helpers.

### 22.

In committing the actions complained of herein, Defendants INTERNATIONAL UNION and LOCAL UNION # 442 and LOCAL UNION # 433 negligently and/or willfully breached the above described duties of care owed by them to Plaintiff for which Plaintiff may recovery [*sic*] general, special and exemplary damages under Georgia law.

Sams, Amended Complaint at pp. 13–14; Orr, Complaint at pp. 18–19.

The defendants removed the suits to this Court pursuant to 28 U.S.C. § 1441. Plaintiffs then filed a motion to remand the action to state court, claiming that the case involved strictly matters of state law; and the employers moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), contending that the allegations failed to state a claim for relief against them.

The Court denied the motion to remand,[1] and on the authority of *Allis–Chalmers Corporation v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), ruled that reference to the collective bargaining agreement ("CBA") between the Unions and the employers would be required to determine the extent of the Unions' duties; thus, § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, authorized removal. The Court also ruled that a negligence action against a union based on a duty to inspect the workplace for safety is preempted and replaced with a

---

**1.** Removal of an entire case is proper if a complaint contains a federal claim and related state claims. 28 U.S.C. § 1441. In complaints such as Sams' and Orr's which do not mention federal law, removal is proper where an asserted state claim is replaced, or preempted, by a federal cause of action. In that situation, the plaintiff is deemed to be asserting the federal cause of action; thus authorizing removal. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983).

federal cause of action premised on the duty of fair representation; thus, removal of the entire case was authorized under *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). *See* Order, August 29, 1986.

The Court granted the motion to dismiss the employers, ruling that the state claims against the employers were not actionable because of the exclusive remedy provision of the Georgia Workers' Compensation Act. To the extent that any federal claims were implicitly stated against the employers, the Court found them to be time-barred. Accordingly, the Court entered final judgment as to Hunt–Wesson and Esmark. The plaintiffs appealed and the Eleventh Circuit affirmed. *Sams v. United Food & Commercial Workers International Union, AFL/CIO, CLC,* 835 F.2d 848 (1988). Regarding remand, the Court of Appeals stated:

> The Supreme Court's decision in *International Bhd. of Elec. Workers, AFL–CIO v. Heckler [sic]*, —— U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), makes it clear that appellants' state law claims against the union are preempted by section 301 ... [and] "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."

*Id.* at 849–59 (*quoting Avco Corporation v. Aero Lodge No. 735*, 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)).

The Eleventh Circuit affirmed the dismissal as to the employers by agreeing that workers' compensation provided the exclusive remedy for any state claims plaintiffs may have had. Regarding the dismissal of the federal claims against the employers, it found plaintiffs' failures to make use of the grievance procedures in the CBA fatal, and stated:

> An employee may not substitute a lawsuit in federal court for use of the grievance procedure: "A rule that permitted an individual to sidestep available griev-

ance procedures would cause arbitration to lose most of its effectiveness ... as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."

*Id.* at 850 (*quoting Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916).

The Unions now move for summary judgment, contending that the six-month statute of limitations applicable to "hybrid" actions, developed in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), governs these lawsuits. The Court agrees.

## DISCUSSION

There are varied rules governing the selection of the appropriate statutes of limitation when employees, who are covered by collective bargaining agreements, sue for damages arising out of work-related events. These various limitations are determined by the identity of the party or parties being sued and the bases for recovery. Thus, a brief overview of applicable labor statutes is necessary.

■ Federal labor law embodies a complex series of national policies established by Congress and effectuated by the National Labor Relations Board and the courts. Two of these policies are paramount: (1) the need for stable bargaining positions between the employers and the representatives of the employees; and (2) a strong preference for arbitration when disputes regarding a CBA occur. Although the development of our labor law has seldom followed a straight-line path, there are a number of relatively clear rules regarding statutes of limitation.

The first deals with "straightforward" suits alleging a breach of the CBA. Section 301 of the LMRA, the predominant force in effectuating a national labor policy and the basis for the preemptive effect of the federal labor statutes, provides:

> Suits for violation of contracts between an employer and a labor organization representing employees ... may be

brought in [a] district court ... without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Congress did not establish a statute of limitations for § 301 suits; rather, courts borrow analogous provisions found elsewhere in the labor statutes, or borrow analogous state statutes to determine the timeliness of the suit. In the typical § 301 action, a union (or an employee/union member) sues the *employer*, alleging breach of the CBA. Generally, in these straightforward § 301 suits, courts borrow the limitations period applicable to state contract actions. *UAW v. Hoosier Cardinal Corporation*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966) (applying Indiana's six-year statute applicable to suits on unwritten contracts). Although borrowing state contract statutes of limitation is the normal rule, the rule is not inflexible. *See id.* at 705 n. 8, 86 S.Ct. at 1113 n. 8; *International Association of Machinists & Aerospace Workers, Local 1688 v. Allied Products Corporation*, 786 F.2d 1561 (11th Cir.1986) (applying the six-month statute applicable to unfair labor practices in a "straightforward" union v. employer § 301 suit alleging breach of the CBA by failure to arbitrate a grievance).

■■■ Historically, when an employee/union member wished to sue his *union,* recovery was premised on a breach of the union's implied duty of fair representation. That duty arises primarily from the exclusive bargaining agency granted to the majority union, National Labor Relations Act ("NLRA") § 9, 29 U.S.C. § 159, as well as the NLRA as a whole; the fiduciary duties embodied in the Labor Bill of Rights, Labor–Management Reporting and Disclo-

sure Act ("LMRDA") § 101, 29 U.S.C. § 411, and the LMRDA as a whole. There is no express statute of limitation for suits based on a breach of a union's duty of fair representation. To fill the gap, the courts have established that the suit is most analogous to an unfair labor practice and borrow the six-month limitations period enacted for such charges. NLRA § 10(b), 29 U.S.C. § 160(b). *Erkins v. United Steelworkers of America, AFL–CIO–CLC,* 723 F.2d 837 (11th Cir.), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); *Local No. 12, United Rubber, Cork, Linoleum & Plastic Workers v. NLRB,* 368 F.2d 12 (5th Cir.1966).

If, as is not uncommon, an employee's suit contains both a § 301 claim against the employer and an unfair representation claim against the union, it is referred to as a "hybrid" action. In hybrid actions, *both* claims are barred if not filed within the six-month period of § 10(b). *DelCostello, supra.*

More recently, employees have utilized a new theory for recovery against their unions. They have sued their unions for breach of the CBA, alleging third-party beneficiary status; thus attempting to state a straightforward § 301 claim. Recently, the Eleventh Circuit was faced with such a suit and, against various challenges, determined that such a theory was cognizable. The court held that a suit by an employee against her union, based on her status as a third-party beneficiary to the CBA, constitutes a straightforward § 301 claim and is governed by the appropriate state statute of limitations governing suits on written contracts. *Hechler v. International Brotherhood of Electrical Workers, AFL–CIO,* 834 F.2d 942, 946 (11th Cir.1987) ("*Hechler III* ").[2]

**2.** The decision in this case seems somewhat inconsistent, at best. As discussed in the text, Hechler claimed the union assumed certain duties from the employer by virtue of provisions in the collective bargaining agreement. She alleged *tortious* breach of those duties and sought *tort* damages. Despite those facts, the Court of Appeals determined that a *contract* statute of limitations provided the best analogy from Florida law.

There is also some confusion as to which duties, once assumed and then breached, are cognizable as § 301 claims. *See infra,* pp. 1581–82. The court left unanswered one other question which appears significant: Can the unions raise the defense of failure to pursue the grievance procedure established in the collective bargaining agreement? Considering that the claims against the union allege breaches of duties assumed under the collective bargaining agreement, it would seem logical that the proce-

In the instant actions, plaintiffs now are attempting to fit within this recent decision. It appears to this Court, however, that there are significant differences between Hechler's suit and the instant lawsuits which require a different result here. Most significantly, plaintiffs joined claims against their Unions, which are cognizable solely as duty of fair representation claims, with claims against their employers, which the Eleventh Circuit deemed to be § 301 claims. As such, these plaintiffs, unlike Hechler, filed hybrid lawsuits. Additionally, plaintiffs' complaints, unlike Hechler's complaint, makes no mention of the collective bargaining agreement. However, because *Hechler III* initially appears controlling, a rather lengthy discussion of Hechler's case follows.

Hechler, a member of the electrical workers' union, was an electrical apprentice employed by Florida Power & Light Company. The company assigned her to perform tasks at a substation where she was injured when she came in contact with highly energized components at the substation. Two years after the accident, she sued her unions in state court, alleging that, "pursuant to the contracts and agreements entered into by and between" the union and the company, and "pursuant to the relationship by and between" herself and her union, the union owed her a duty to ensure a safe workplace and a duty to ensure she was assigned tasks commensurate with her training.

The unions removed the suit to federal court where the district court dismissed the suit as untimely. That court ruled that any duties owed to plaintiff flowed from the CBA and that the claims stated, at most, a breach of the duty of fair representation. The court, therefore, applied the six-month statute of limitation and dismissed. No. 84–6213–CIV–JAG (Gonzalez, J., S.D.Fla.).

The Eleventh Circuit reversed in *Hechler v. International Brotherhood of Electrical Workers, AFL–CIO*, 772 F.2d 788 (11th Cir.1985) (*"Hechler I"*). The court agreed

with Hechler that her claims sounded in tort, not contract, and were not preempted by § 301. The court stated, "[t]hough the contract may be of use in defining the scope of the duty owed, liability will turn on basic negligence principles as developed by state law." *Id.* at 794.

The court then fully discussed the nature of unfair representation claims and their relationship to common law negligence actions. The court summarized various conflicting cases and developed a two-part analysis for determining whether a common law negligence suit is available against a union, or is replaced by a fair representation claim:

> First, a court must determine whether the duty allegedly breached by the union is so inextricably intertwined with the collective bargaining agreement that only a duty of fair representation claim is available, thereby preempting any claim for common law tort. Second, in making this determination, a court must be aware of federal labor policy and whether a negligence suit against a union impermissibly impedes upon the federal labor-management regulatory scheme.

*Id.* at 796.

Ultimately, the court determined that Hechler's allegations stated more than an unfair representation claim because:

> In the present case the plaintiff alleges a duty running from the union to her individually that required the union to assure that she was first qualified to work in a dangerous electrical substation on the job assigned to her prior to her assignment. The plaintiff does not claim the union was responsible for making the substation safe for all of the workers.

*Id.* at 798.

Accordingly, the court found no preemption and ordered the case remanded to the state court.

That decision was vacated by the United States Supreme Court in *Hechler II*, 481

dural requirements of the contract would also determine the method by which the claims are resolved.

U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). The Court relied principally on *Allis–Chalmers, supra,* and ruled that Hechler's claims were insufficiently independent of the collective bargaining agreement to withstand the preemptive force of § 301. The Court acknowledged that generally it is the *employer,* not the union, who has the duty to ensure the safety of the workers, but stated:

> Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement. If a party breaches a contractual duty, the settled rule under Florida law is that the aggrieved party may bring either an action for breach of contract or a tort action for the injuries suffered as a result of the contractual breach.

*Id.* at 802.

The Court characterized Hechler's complaint as stating "precisely this type of tortious breach-of-contract claim," repeating her allegations that " 'pursuant to contracts and agreements' " between the union and the company, the union owed particular duties to her. *Id.*[3] The Court concluded:

> In order to determine the Union's tort liability, however, a court would have to ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union to ensure that Hechler was provided a safe workplace, and second, the nature and scope of that duty, that is, whether, and

to what extent, the Union's duty extended to the particular responsibilities alleged by [Hechler].... Thus, in this case, as in Allis–Chalmers, it is clear that "questions of contract interpretation ... underlie any finding of tort liability." The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in Allis–Chalmers, respondent is precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action.

*Id.* at 803 (*quoting Allis–Chalmers,* 471 U.S. at 218, 105 S.Ct. at 915).

The Court declined to rule on the appropriate statute of limitation for her suit, stating:

> If respondent's suit is treated as a § 301 claim, a court must determine whether her claim is time-barred by the applicable statute of limitations under federal law. The Union argues that respondent's claim can be characterized only as a "duty of fair representation" claim against the Union for failing properly to represent Hechler's interests before the employer, and that her claim must therefore be governed by the 6–month period of limitations prescribed by DelCostello.... [Hechler] argues, however, that her suit is not a "duty of fair representation" claim, but is simply a § 301 claim, on the basis of her status as a third-party beneficiary....
>
> The Court of Appeals did not review the District Court's holding that the 6–

---

**3.** In a lengthy footnote, the Court discussed Hechler's argument that her claims arose solely under state law and by virtue of the union/union member relationship. The Court stated, in part:

> Even assuming that respondent's pleadings may be construed liberally as stating that various, unenumerated Florida laws place a duty of care on a union to provide a safe workplace for its members, respondent effectively abandoned that theory in the lower courts and we decline to consider the argument here. Hechler argued below simply that the Union's duty of care arose from and was determined by the collective-bargaining agreement to which she was a third-party beneficiary.
>
> \*　\*　\*　\*　\*　\*
>
> Even if such a state-law obligation, which would directly regulate the responsibility of a

union in a workplace, could survive the pre-emptive power of federal labor law, we conclude that it is too late in the day for respondent to present to the Court this new-found [*sic*] legal theory.

*Hechler II,* 481 U.S. ——, ——, 107 S.Ct. at 2168–69 n. 5, 95 L.Ed.2d at 803 n. 5.

So it is possible to argue that *Hechler II* should be limited to its facts and provides no guidance to complaints, such as these, which do not mention the collective bargaining agreement nor suggest that the unions assumed duties under any contractual theory. Because the Court of Appeals in *Sams, see supra* p. 1577, cited *Hechler II* when it affirmed this Court's previous denial of remand, such a narrow interpretation of the decision seems unwarranted.

month period of limitations adopted in DelCostello governs Hechler's suit, because it concluded that respondent's claim was not preempted under federal labor law. We believe it appropriate for the Court of Appeals to consider, in the first instance, whether the period of limitations adopted in DelCostello is applicable to Hechler's claim.

*Id.* at 804–05.

On remand, the Eleventh Circuit ruled that Hechler's suit was governed by the five-year Florida statute applicable to contract claims. *Hechler III, supra.* The court began by stating:

> We note only that Hechler claims that she was a third-party beneficiary of the collective bargaining agreement between the [Union] and her employer and that the [Union] breached duties it assumed for her benefit under that contract. The [Union] does not contest Hechler's right to bring such a claim.

*Id.* at 943 (*citing Hechler II,* 481 U.S. ——, ——, 107 S.Ct. at 2169 n. 7, 95 L.Ed.2d at 804 n. 7).

At the same time, the court stated, "[w]e believe that the district court erred in characterizing Hechler's claim as alleging only a breach of the [Union]'s duty of fair representation;" and, "Hechler certainly has alleged other than a breach of the duty of fair representation, and the district court erred in concluding differently." *Id.* at 946, 947. Thus, the court concluded that Hechler stated a claim that her union assumed duties under the CBA, the breach of which could be pursued as § 301 claims under a third-party beneficiary theory.

The court, however, does not define *which* duties are cognizable under a breach of contractually assumed duties theory. It is unclear whether the court meant that all of the allegedly assumed duties are cognizable as breach of contract claims or whether, in line with *Hechler I,* only certain duties may be maintained as breach claims while others, particularly the generalized duty to ensure a safe workplace, are still cognizable only as a breach of the duty of fair representation claim.

■ It appears to this Court that the sensible reading of *Hechler III,* in light of the specifics of Hechler's complaint and as amplified by the various decisions in her case, is that only specific duties are cognizable as § 301 third-party beneficiary claims. Excluded from that category are claims alleging a breach of the generalized duty to ensure a safe workplace, which remains cognizable only as a breach of the duty of fair representation.

As noted above, in a previous Order, this Court determined that a fair representation claim supplants a claim alleging a breach of the generalized duty to ensure a safe workplace. The language and the date of the affirmance of that Order in *Sams, supra* (decided after *Hechler III*), establish that this ruling is undisturbed by the *Hechler III* decision. Without clearer guidance from the Court of Appeals, this Court will not reevaluate that ruling.

■ The instant lawsuits allege breaches of various duties by the Unions, the first of which is a generalized duty to ensure a safe workplace. Complaints, ¶ 21(a), *see* p. 1577 *supra.* Assuming, *arguendo,* that plaintiffs' allegations state, in addition to an unfair representation claim, cognizable § 301 claims against the Unions,[4] these lawsuits would then best be described as "quarter-cross" lawsuits: plaintiffs' hybrid lawsuits (the § 301 claims against the employers joined with the unfair representation claim against the Unions) crossed with additional § 301 claims under the third-party beneficiary theory against the Unions.

Consequently, the Court is left with determining the appropriate statute of limita-

---

**4.** Although arguably the complaints allege specific duties running to the individual plaintiffs, *see* Complaints ¶ 21(b), (f), *supra* p. 1577, which could be construed as "assumed duty § 301 claims," it seems doubtful that these complaints should be so construed. The Supreme Court and *Hechler III* both relied heavily on Hechler's pleadings which state, "pursuant to contracts and agreements by and between" the Union and Florida Power, the Union assumed certain duties. Significantly, that kind of language is lacking in these complaints.

tions for "quarter-cross" lawsuits. Because *DelCostello* requires that the six-month limitation period of NLRA § 10(b) be applied to the hybrid suits, the more specific question here is whether the addition of third-party beneficiary claims against the Unions is sufficient to abrogate the *DelCostello* rule. The national labor policies, which are fully laid out in *Hechler III*, 834 F.2d at 947–49, and the lessons of *DelCostello* and *Hechler II* establish that the presence of the additional claim does not effect the applicability of *DelCostello.*

The gravamen of these complaints is that some party breached its duties to ensure the safety of the workers at Hunt–Wesson and Esmark. The fundamental lesson of Hechler's case is that, regardless of the source of the duties, the terms of the collective bargaining agreement will determine whether the Unions or the employer held those duties. It is imperative to the Unions, the employers and, most particularly, to the work force as a whole that the determination be made quickly so that the responsible party can act accordingly. Only with a final determination as to who holds the duties will the work force be assured of safe working conditions, which is basic to modern labor law. As *Hechler III* points out, tort suits, even under the rubric of contractually assumed duties, help to establish the nature of the duties and the standards of appropriate conduct. *See* 834 F.2d at 948 (a successful suit "might affect the [Union]'s understanding of the training and monitoring obligations it assumed").

When, as in the lawsuits filed here, both parties to the contract are to be instructed as to those obligations, the national interests in stable bargaining positions, as well as the need for uniform results, is heightened.

Although applying a relatively brief limitations period at first appears to work an injustice to the injured plaintiffs, the cases cannot be viewed in a vacuum. Workers' compensation acts in every state provide that employers are liable without fault for a broad range of work-related accidents. While the individual injured employee has a vested interest in circumventing the perceived limitations of workers' compensation recovery, the remainder of the players in the labor arena—the unions, the employers and the workforce—have at least as great an interest in assuring the prompt and uniform disposition of these types of disputes. As repeated in *DelCostello*, it is up to Congress and not the courts to balance the competing interests and determine policy:

> "In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement.... Accordingly, '[t]he need for uniformity' among procedures followed for similar claims, as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this."

*DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294 (*quoting United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)).

An alternative solution would be to dismiss the claims which constitute the hybrid suit under *DelCostello* and apply the *Hechler III* rationale to the § 301 claims, if any, against the Unions. The *DelCostello* Court expressly rejected the argument that the various claims against the individual parties can be severed and governed by separate statutes of limitation. 462 U.S. at 167–69, 103 S.Ct. at 2292–93, n. 19. This Court can see no principled rationale for ignoring that ruling in this context, and thus declines to adopt such a rule.

### CONCLUSION

*DelCostello* requires that these actions are governed by the six-month limitations period of NLRA § 10(b). Unfortunately, because the lawsuits were filed nearly two

years after the accident occurred, the suits are untimely. If this Court were writing on a clean slate, or if this Court were in the position to enunciate federal labor policy as it relates to a union's duty to its members, the Court might very well reach a different result. As the law stands now, defendants' motion for summary judgment is GRANTED and plaintiffs' claims against the union defendants are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter appropriate judgments of dismissal on behalf of the defendants and against the plaintiffs.