931 F.2d 372
 Dana THOMPSON, Plaintiff-Appellant,
v.
SUPERIOR FIREPLACE COMPANY; Mobel Holdings Corporation, a
Delaware Corporation; Mobex Corporation, a Delaware
Corporation; and Sheet Metal Workers International
Association, AFL-CIO, No. 4, Defendants-Appellees,
Cincinnati Incorporated; and Mayex Corporation, Defendants.
 No. 90-5502.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 27, 1990.
Decided Feb. 5, 1991.
 
 Jeffrey A. Garrety, Garrety & Sanders, Jackson, Tenn., Gary S. Logsdon, Brownsville, Ky., Steve Downey (argued), Bowling Green, Ky., for plaintiff-appellant.
 Tom Elam, William B. Acree, Jr. (argued), Union City, Tenn., Allen S. Blair, Jennifer Farmer, Hanover, Walsh, Jalenak & Blair, Memphis, Tenn., for defendants-appellees.
 David Stivers, Costa Mesa, Cal., for defendants.
 Before MARTIN and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a products liability suit brought by an injured factory worker against her employer, the employer's parent company, and a labor union. The district court dismissed all defendants before trial. At the time of the dismissal of the employer, however, the district court had not yet ruled on plaintiff's motion to amend her complaint. As a result, we reverse the dismissal of the employer and remand for consideration of plaintiff's motion to amend. We affirm the dismissal of the union and the parent company.
 
 
 2
 * On August 29, 1988, plaintiff-appellant Dana Thompson was injured while working on a hydrolytic press brake at Superior Fireplace Company ("Superior") in Union City, Tennessee. The press brake malfunctioned and four fingers of plaintiff's right hand were severely injured. At the time of the injury, the Sheet Metal Workers International Association, AFL-CIO, Local No. 4 ("the union") and Superior were parties to a collective bargaining agreement ("CBA"). Superior Fireplace was owned by Mobel. The press brake was manufactured by Cincinnati Incorporated.
 
 
 3
 Plaintiff filed this diversity action on August 29, 1989 against Superior, Mobel Holdings Corporation, Mobex Corporation, Mayex Corporation, Cincinnati Incorporated, and the union in the U.S. District Court for the Western District of Tennessee. Plaintiff's complaint asserted six counts and sought $700,000.00 compensatory and $1,000,000.00 punitive damages. Count one alleged that Mayex, as Superior's parent company, had a duty under federal, state, and common law to protect the employees of its subsidiary from injury. Count two stated that Superior was aware that its presses were defective and violated OSHA and state regulations, but negligently failed to take corrective action "with the knowledge that another injury was inevitable." J.App. at 10 (complaint). Count three alleges that Cincinnati Incorporated negligently manufactured the press brake so that the brake was not safe for intended use. Count four stated that the union failed to provide plaintiff with a safe work environment "after having assumed such duty by virtue of written contract and/or implied in law, contract or warranty." Id. at 19. Count five charged each of the defendants with "gross negligence" and "outrageous conduct" which resulted in plaintiff's injuries. Count six asked for prejudgment interest of any award "at the current Judgment rate from August 29, 1988." J.App. at 20.
 
 
 4
 On October 9, 1989, plaintiff voluntarily dismissed Mayex from the suit. Superior, Mobex, and Mobel Holdings, also moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the Rule 12(b)(6) motions to dismiss of defendants Superior and Mobel. Focusing on plaintiff's common law claim that Superior and Mobel deliberately intended to injure plaintiff, the court found that there was insufficient evidence to support a finding of intent. The court relied on King v. Ross Coal Co., 684 S.W.2d 617, 619 (Tenn.App.1984) for the proposition that even if defendants' conduct amounted to "knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." Id. (emphasis in original). As the district court found no evidence of an intent to injure, plaintiff's exclusive remedy for her work-related injury was workers compensation under Tenn.Code Ann. Sec. 50-6-108.
 
 
 5
 The district court also granted the union's motion for summary judgment. 731 F.Supp. 259. The court found that Tennessee law places the duty to provide a safe workplace on the employer, not the union. J.App. at 29. The court also rejected plaintiff's argument that the CBA, which mandates union participation in a "safety committee", created such a duty. The court relied on Bryant v. International Union, United Mine Workers of America, 467 F.2d 1, 5-6 (6th Cir.1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973) (holding that CBA provision stating mine safety committee "may" inspect equipment did not create affirmative duty to inspect).
 
 
 6
 Plaintiff moved to amend her complaint against Superior on November 16, 1989. The district court denied plaintiff's motion to amend on January 23, 1990. This appeal followed.
 
 II
 
 7
 We review de novo the district court's dismissal of Superior and Mobex under Fed.R.Civ.P. 12(b)(6). All factual allegations in the complaint must be accepted as true. The motion to dismiss should be denied unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir.1987) (en banc).
 
 
 8
 * Plaintiff's primary piece of circumstantial evidence of Superior's intent to injure is a 1977 invoice for the hydrolytic press which indicated that the "point of operation guarding [was] offered and refused by customer." J.App. at 136. The invoice was submitted with the plaintiff's motion to amend on November 16, 1988. The motion to amend was still pending when Superior's motion to dismiss was granted on December 1. The motion to amend was formally denied on January 23, 1990. J.App. at 143.
 
 
 9
 Fed.R.Civ.P. 15(a) states that motions to amend "shall be freely given." We review the district court's failure to grant a motion to amend under an abuse of discretion standard. Marks v. Shell Oil, 830 F.2d 68, 69 (6th Cir.1987). However, this court has held that "when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred." Id. Accord Ellison v. Ford Motor Co., 847 F.2d 297, 300-301 (6th Cir.1988) (per curiam) ("The district court's failure to consider and rule on plaintiff's pending motion to amend the complaint was an abuse of discretion."). See also Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 341 F.2d 715, 723 (6th Cir.), cert. denied, 382 U.S. 839, 86 S.Ct. 87, 15 L.Ed.2d 81 (1965) ("Where an amended pleading has been tendered and permission to file it should be given, an adversary motion for summary judgment should not be granted before it is filed and considered.").
 
 
 10
 The motion to dismiss was granted while the motion to amend was still pending; therefor, we find that the dismissal of Superior should be vacated and remanded for reconsideration in light of the motion to amend. The evidence presented in plaintiff's motion to amend should have been given closer consideration before the motion to dismiss was granted.
 
 B
 
 11
 Plaintiff also argues that Mobel, as the parent company of Superior, had negligently performed its duty to provide a safe workplace for Superior's employees, citing Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). Blue Diamond held that, under Kentucky law, "a parent is not immune from tort liability to its subsidiary employees for its own, independent acts of negligence. The parent should be liable under customary principles of the common law for harm resulting from its own negligent or reckless conduct." Id. at 663 (emphasis added). Plaintiff has failed to explain which independent acts of negligence by Mobel resulted in her injury. Plaintiff does not assert any independent acts of Mobel relating to the injury, or even argue that Mobel was involved to any extent with the operation of Superior. Without such allegations, plaintiff's case appears to be based on derivative liability in which the parent is liable under respondeat superior for the negligence of the subsidiary, a result which was specifically disapproved in Blue Diamond. Id. at 663. Because plaintiff does not allege any independent acts of Mobel which could raise liability questions, the district court's grant of Mobel's motion to dismiss is affirmed.
 
 III
 
 12
 Our review of the district court's grant of summary judgment in favor of the union is de novo. The union has the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The plaintiff, as opposing party, must present proof of specific facts showing that a genuine issue for trial exists. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 13
 Plaintiff argues that the district court incorrectly granted the union's summary judgment motion because the union had both common law and contractual duties to provide plaintiff with a safe working environment. The district court, however, found that, under Tennessee law, "the duty to furnish an employee a reasonably safe place to work is the duty of the employer, and that duty is 'personal, continuous, and non-delegable.' " Hamilton v. Bean, 745 F.2d 1034, 1036 (6th Cir.1984) (quoting Overstreet v. Norman, 44 Tenn.App. 343, 349, 314 S.W.2d 47, 50 (1957)).
 
 
 14
 Plaintiff's brief acknowledges that there are no cases or statutes supporting her position, but nevertheless argues that "every person owes a duty to every other person to exercise ordinary care in their activities to prevent foreseeable injury." Plaintiff also looks to the Restatement for support. The Restatement states that
 
 
 15
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 
 
 16
 (a) his failure to exercise such care increases the risk of such harm, or
 
 
 17
 (b) the harm is suffered because of the other's reliance upon the undertaking.
 
 
 18
 Restatement (Second) of Torts Sec. 323 (1965).
 
 
 19
 In support, plaintiff points to a safety committee mandated by the CBA and argues that union participation in the committee created an affirmative duty on the part of the union to ensure her safety. Plaintiff also argues that the union affirmatively undertook to ensure her safety through Article XVII of the CBA, which stated that "[t]he Union agrees to cooperate fully with the company in resolving safety issues in a reasonable, practicable, cost effective manner[.]"
 
 
 20
 These arguments have been addressed in two recent Supreme Court decisions. In IBEW, AFL-CIO v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), an injured plaintiff asserted that her union had a duty of care to ensure the workplace was safe, and that this duty was breached by her injury in a dangerous work assignment. The Court stated that:
 
 
 21
 Under the common law ... it is the employer, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace.
 
 
 22
 * * * * * *
 
 
 23
 Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement.
 
 
 24
 * * * * * *
 
 
 25
 Respondent's allegations of negligence assume significance if--and only if--the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached.
 
 
 26
 Hechler, 481 U.S. at 859-61, 107 S.Ct. at 2167 (emphasis in original).
 
 
 27
 The argument that a safety committee established in a CBA creates a duty on the part of the union to assure a safe workplace was rejected in United Steelworkers of America v. Rawson, --- U.S. ----, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). In Rawson, a CBA created a joint management/labor committee designed to foster compliance with mine safety standards. The union in Rawson, like the union in the instant case, insisted that its duty of fair representation does not extend to a duty to ensure a safe workplace. The Supreme Court acknowledged that a union is not prohibited from assuming such a duty, but stated that
 
 
 28
 If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees.
 
 
 29
 * * * * * *
 
 
 30
 Nothing in the collective-bargaining agreement suggests that it creates rights directly enforceable by the individual employees against the Union. The [Article creating a safety committee] consists entirely of agreements between the Union and the employer and enforceable only by them.... [E]ven if this section might be interpreted as obliging the Union to inspect the mine in such circumstances, the promise is not one specifically made to, or enforceable by, individual employees. Nor have respondents placed anything in the record indicating that any such complaints were made or that the Union failed to act on them.
 
 
 31
 Id., 110 S.Ct. at 1912.
 
 
 32
 We find the reasoning in Rawson and Hechler persuasive on this issue, and that the district court was correct in granting summary judgment in favor of the union.
 
 IV
 
 33
 The dismissal of Superior is REVERSED and REMANDED for reconsideration in light of Plaintiff's motion to amend. The dismissals of Mobex and the union are AFFIRMED.