GENE L. BABB, APPELLANT AND CROSS-APPELLEE, v. UNITED FOOD AND COMMERCIAL WORKERS DISTRICT UNION, LOCAL 271, APPELLEE AND CROSS-APPELLANT.

448 N.W.2d 168

Filed November 22, 1989.   No. 88-272.

Soren S. Jensen and J Russell Derr, of Erickson & Sederstrom, P.C., for appellant.

Thomas F. Dowd for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the district court for Douglas County granting the motion for summary judgment of defendant, United Food and Commercial Workers District Union, Local 271, on plaintiff Gene L. Babb's petition for severance pay in the first cause of action and damages for breach of contract in the second cause of action.

Babb's claims are based on a contract of merger between United Food and Commercial Workers Union, Retail Clerks Local 1015 (Local 1015) and United Food and Commercial Workers Union, District Union Local 271 (Local 271), and on the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 et seq. (Reissue 1984).

On February 29, 1988, the district court found that Babb's claims under state law were preempted by federal law, § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1982) (hereafter LMRA § 301). The court held that pursuant to LMRA § 301, Babb had failed to exhaust the required remedy of arbitration under the merger agreement regarding his first cause of action, and with regard to his second cause of action, Babb exercised his remedy of arbitration but received an adverse decision which is final and binding on the merits. Babb's three assignments of error may be summarized in his allegation that the trial court erred in sustaining defendant's

motion for summary judgment and determining that Babb's state law claim is preempted by federal law, specifically LMRA § 301.

The record shows that pursuant to a merger agreement executed on August 12, 1983, Local 1015 and Local 271 merged to become one local union operating under the name "United Food and Commercial Workers District Union, Local 271" (hereafter successor union). The merger became effective September 1, 1983.

Babb, as president of Local 1015 at the time of the merger, executed the agreement on behalf of Local 1015. Upon commencement of the merger, Babb was installed as secretary-treasurer of the successor union pursuant to the merger agreement, and he also had organizing duties as a business agent for the successor union. Babb's salary as president of Local 1015 was $628 per week at the time of the merger, and then he received $620 plus a $20 officer allowance per week from the successor union after the merger. The parties dispute whether the postmerger salary is for compensation as secretary-treasurer or as business agent.

Babb continued in this dual capacity until he was notified in a letter dated February 22, 1985, from the successor union president, Robert Parker, that his employment would be terminated effective March 15. Babb then looked to the merger agreement for redress. Paragraph XI(A) of the agreement states:

> In the event of any dispute or controversy arising out of or under this Merger Agreement, such dispute or controversy shall be submitted to the UFCW International Executive Committee. The decision of the International Executive Committee on the disputed matter shall be final and conclusive on all parties and may be enforced in any court of competent jurisdiction.

In a letter dated March 19, 1985, to the international union president, William H. Wynn, Babb invoked the arbitration procedure of the merger agreement regarding the termination of his employment. Babb received an adverse ruling in a letter from the international union dated January 15, 1986. In upholding the termination, the arbitrators found that Babb was

salaried as an appointed business agent of the successor union, and not by virtue of holding the office of secretary-treasurer. They further found that Babb's employment was not guaranteed in any other way.

Babb retained the nonsalaried office of secretary-treasurer until December 31, 1985, which was the expiration of his term, as stated in the merger agreement.

Babb then sent an August 4, 1986, letter to President Parker requesting severance pay in the amount of 2 weeks' pay for each year of employment. Babb's union employment totaled 19 years. Babb based this request on the adoption of a severance pay policy for officers by the executive board of Local 1015 at an April 13, 1983, board meeting. The request was further based on the alleged assumption of this obligation by the successor union under sections V and VIII of the merger agreement. These sections, in pertinent part, state:

V. Employees

(A) On the effective date of the merger, the employees of Locals 271 and 1015 shall become employees of the Merged Organization without interruption of their employment status.

. . . .

VIII. Rights, Property and Obligations of Merged Organization

(A) . . . The Merged Organization shall, on and after the effective date of the merger, assume and be responsible for all the debts, liabilities, contract obligations, and other obligations of District Union Local No. 271 and UFCW Local No. 1015. Such debts, liabilities, contract obligations, and other obligations shall from that time forth attach to the Merged Organization to the same extent as if the said debts, liabilities, contract obligations, and other obligations were incurred or otherwise contracted by it.

President Parker stated in a reply dated August 11, 1986, that it was his opinion that Babb had no severance pay due him from the successor union, but Parker said that he had referred the matter to the international union for review. This letter is the last correspondence in the record concerning the severance

pay issue.

Babb then filed this suit in the district court for Douglas County on November 18, 1986.

## SCOPE OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989).

## LMRA § 301 PREEMPTION

LMRA § 301(a) states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

§ 185(a).

The court below presumably applied federal law because Babb based his claim on a contract "between any such labor organizations." However, a review of decisions involving application of LMRA § 301 reveals that federal law does not necessarily apply simply because there is a contract between labor organizations.

It has been held that a constitution of a labor union is not a "contract" within the purview of the statute conferring federal jurisdiction over suits for violation of contracts between labor organizations representing employees in industry affecting commerce in an intraunion dispute unrelated to a collective bargaining agreement or to union affairs having no connection with industrial and economic peace. *1199 DC, Nat. U. of H. & H. C. E. v. National U. of H. & H. C. E.*, 394 F. Supp. 189 (D.D.C. 1975), *aff'd in part and in part rev'd* 533 F.2d 1205 (D.C. Cir. 1976). See, also, *Keck v. Employees Independent Association*, 387 F. Supp. 241 (E.D. Pa. 1974).

The clear gist of the decisions is that LMRA § 301 applies

only in the interpretation of a collective bargaining agreement, where the contract deals with employee representation, or where the dispute has some connection with industrial and economic peace between labor and management.

For example, in *Fredericks v. Pa. Soc. Serv. Union, Local 668*, 410 F. Supp. 1063 (W.D. Pa. 1976), an individual nonmember of a union sued the union for breach of an alleged oral agreement to employ him as executive director of the union, and the union removed the action from state court to federal district court. In granting a motion to remand the case to state court, the federal court cited the aforementioned proposition that the dispute have some connection with industrial and economic peace, and further stated:

> It is obvious that, here, no connection is constructible. There is no collective bargaining agreement here; neither is the plaintiff claiming that the defendant Union is not representing his rights before an employer. What is before me now is an individual dispute between two parties as to the validity of an alleged oral employment agreement between them. Certainly members of the defendant Union will not be adversely affected in the realm of employer-employee relations by the result of an adjudication here, or elsewhere.

*Fredericks, supra* at 1065. See, also, *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988) (LMRA § 301 held not to apply in this action for wrongful termination).

As in *Fredericks*, it appears to us, there is no connection in the instant case with industrial or economic peace. The merger agreement upon which Babb bases his claim is obviously not a collective bargaining agreement, and this case has nothing to do with the successor union's representing Babb. At the heart of this matter is an action against an employer for breach of an alleged guarantee of employment, and an action for breach of a provision of the merger agreement. That two labor unions were parties to the agreement which is alleged to have been breached merely clouded the basic issues.

In following the U.S. Supreme Court's holding in *Lingle, supra,* that an application of state law is preempted by LMRA

§ 301 only if such application requires the interpretation of a collective bargaining agreement, we hold that LMRA § 301 does not preempt the decision of this case under state law. The order of the trial court granting summary judgment is therefore vacated.

## FIRST CAUSE OF ACTION

Babb's first cause of action claims that the successor union is in violation of the Nebraska Wage Payment and Collection Act, §§ 48-1228 et seq., in withholding the severance pay that is allegedly due him by virtue of the merger agreement. The successor union asserts that Babb is required by the agreement to submit this claim to binding arbitration and cannot bring this action in our courts.

Arbitration agreements entered into before a dispute arises which purport to deny the parties the right to resort to the courts nonetheless oust the courts of their jurisdiction and are thus against public policy and therefore void and unenforceable. *Rawlings v. Amco Ins. Co.*, 231 Neb. 874, 438 N.W.2d 769 (1989); *Overland Constructors v. Millard School Dist.*, 220 Neb. 220, 369 N.W.2d 69 (1985). The arbitration provision in the merger agreement is just such an unenforceable agreement, and Babb cannot be excluded from the courts by virtue of it.

We have also held that the Nebraska Wage Payment and Collection Act applies only to actions to recover wages due the employee for labor or services performed for the employer. The act does not apply to severance payment which becomes due upon termination of employment. *Heimbouch v. Victorio Ins. Serv., Inc.*, 220 Neb. 279, 369 N.W.2d 620 (1985).

Although the act is inapplicable to this claim, Babb may still have a common-law cause of action for breach of contract. The record shows that issues exist regarding the adoption and rescission of the severance pay policy by Local 1015, and whether a contractual obligation for the successor union to pay Babb severance pay arose under the merger agreement.

## SECOND CAUSE OF ACTION

Although an agreement to arbitrate future disputes is unenforceable, the agreement between Babb and the successor

union to submit the termination issue to arbitration was voluntary and arose after the dispute.

Babb voluntarily requested and invoked the arbitration procedure of the merger agreement in his March 19, 1985, letter to the international union. He was not forced to arbitrate by the successor union. The successor union acquiesced in Babb's invocation of the arbitration process.

An award, whether under the statute or common law, is, in the absence of fraud or mistake, prima facie binding on the parties thereto, and the burden of alleging and proving its invalidity rests upon the party seeking to set aside the decision. The general policy of the courts is that an arbitration award should not be set aside as inequitable unless it is grossly excessive and shocks the conscience of the court. *Simpson v. Simpson*, 194 Neb. 453, 232 N.W.2d 132 (1975).

The petition does not allege either fraud or mistake in the arbitration process, and the record does not demonstrate any issue of fact as to fraud or mistake.

The district court was correct in its determination that the arbitration decision is final and binding; however, the court erred in applying federal law to arrive at its determination. State law is properly applied to Babb's second cause of action, and pursuant thereto, we find that the arbitrator's decision is binding on the parties.

## CONCLUSION

The successor union's cross-appeal for an attorney fee pursuant to the Nebraska Wage Payment and Collection Act is rendered moot, as the act is not applicable to this case. The order of the district court granting summary judgment is reversed as to Babb's first cause of action, and the cause is remanded for trial on that issue.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.