HAWKINS CONSTRUCTION COMPANY, APPELLANT, V.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, LOCAL #21 OF OMAHA, NEBRASKA,
APPELLEE.

525 N.W.2d 637

Filed December 20, 1994.    No. A-93-021.

Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Eugene L. Hillman and John S. Lingo, of McCormack, Cooney, Hillman & Elder, for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

Hawkins Construction Company brought an action against the International Association of Bridge, Structural and Ornamental Iron Workers, Local #21 of Omaha, Nebraska (union), for indemnification for the amount of workers' compensation benefits Hawkins paid to an employee supplied by the union. Hawkins appeals the decision of the Douglas County District Court which sustained the demurrer filed by the union and dismissed Hawkins' amended petition. We affirm because (1) Hawkins' amended petition failed on its face to state a cause of action for negligent misrepresentation and (2) Hawkins' negligence action was preempted by § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (1988) (LMRA), and therefore barred by the Nebraska statute of limitations for federal claims, Neb. Rev. Stat. § 25-219 (Reissue 1989).

## I. FACTUAL BACKGROUND

As we are required to do, we accept as true all facts which were well pled in Hawkins' amended petition and any proper and reasonable inferences of law and fact which can be drawn therefrom. See *Robinson v. Cushman, Inc.*, 242 Neb. 830, 496 N.W.2d 923 (1993). Having done so, we find that the record shows the following:

On August 14, 1985, Hawkins and the union entered into a collective bargaining agreement (CBA) which governed the terms and conditions of employment for Hawkins' employees. The preamble to the CBA stated that one of the purposes of the agreement was "securing for the Employer sufficient skilled workmen insofar as possible to provide for labor's continuous employment." In May 1987, pursuant to this language in the preamble, Hawkins requested that the union provide a construction worker to perform the customary duties of an ironworker. The union obliged by providing one Harold DeBrie.

Sometime later, DeBrie injured his back in the course and scope of his employment with Hawkins. DeBrie filed a claim with the Workers' Compensation Court, which issued an award in DeBrie's favor. At the time the instant action was filed, Hawkins had paid $162,964 in workers' compensation benefits on behalf of DeBrie.

Hawkins filed its petition in the case at bar seeking indemnity from the union for the workers' compensation benefits paid to DeBrie. The union filed a general demurrer alleging that Hawkins' amended petition failed to state a cause of action upon which relief could be granted and failed to confer jurisdiction on the district court. The district court sustained the demurrer, citing three grounds: (1) Hawkins' claims were preempted by LMRA § 301 and therefore barred by the Nebraska statute of limitations for federal claims found in § 25-219; (2) Hawkins' claims ran afoul of the exclusive remedy for employers in the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-118 (Reissue 1993); and (3) Hawkins' claims were unsupported by the language of the CBA.

Following the district court's order sustaining the union's demurrer, Hawkins elected to stand on its amended petition. Subsequently, the district court dismissed Hawkins' amended petition with prejudice. This appeal followed.

## II. ASSIGNMENTS OF ERROR

Hawkins lists five assignments of error, all of which allege that the district court erred in sustaining the union's demurrer and in dismissing Hawkins' amended petition.

## III. STANDARD OF REVIEW

■ Whether a petition states a cause of action is a question of law. Regarding such a question, an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

■ In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994). In determining whether a cause of action has been stated, the petition is to be construed liberally; if as so construed it states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Gibb v. Citicorp Mortgage, Inc., supra*; *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* _____ U.S. _____, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993).

## IV. ANALYSIS

### 1. DEFINING HAWKINS' CAUSES OF ACTION

■ In its amended petition, Hawkins sets forth what purports to be three separate causes of action. In reality, Hawkins' amended petition stated two causes of action and three theories of recovery. A theory of recovery is not itself a cause of action. *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co., supra*. A cause of action consists of the fact or facts which give one a right to judicial relief against another. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co., supra*. Our reading of Hawkins' amended petition reveals only two alleged causes of action: negligence and negligent misrepresentation. Hawkins pled two theories of recovery for its negligence cause of action, each of which was labeled a "cause of action": (1) negligence for breach of an implied duty to provide a physically

fit and healthy worker and (2) active liability on the union's part, as opposed to passive or constructive liability on Hawkins' behalf.

## 2. NEGLIGENT MISREPRESENTATION

In its amended petition, Hawkins alleged that the union negligently misrepresented DeBrie's condition. As support for this cause of action, Hawkins asserted the following:

13. That in addition to the duties set forth in the First Cause of Action the defendant undertook the duty to furnish employees who were reasonably fit, healthy, and able to perform jobs without unreasonable risk of serious harm for the normal work of the construction business of the plaintiff.

. . . .

15. That on or before providing Mr. DeBrie to fill the position with plaintiff, defendant knew or should have known: (1) the extent of plaintiff's usual and customary work as a construction company and what the duties of an ironworker with plaintiff would be; (2) that Mr. DeBrie was specifically hired to do such work and that such work would include physical exertion which would involve the use of and exertion of Mr. DeBrie's back; and (3) that plaintiff was relying on defendant to provide a reasonably physically fit worker, free from any physical disabilities which would cause the worker problems in performing the intended job.

. . . .

17. That before sending Mr. DeBrie to work for plaintiff, defendant knew or should have known that Mr. DeBrie had a physical condition to wit: a weakened back, which would not permit him to safely perform his intended work for plaintiff and that such condition would put him at risk for further severe injury while performing his work for plaintiff. That the defendant negligently misrepresented the physical abilities and health condition of Harold DeBrie when referring him to plaintiff.

. . . .

20. That the defendant is liable to the plaintiff for its

breach of the duty it undertook and its negligent misrepresentation in the following particulars to wit: (1) in failing to provide a reasonably fit worker for the intended work; (2) in failing to warn plaintiff of DeBrie's condition; (3) in representing that Mr. DeBrie could safely perform the intended work without exposure to additional injury when it knew or should have known he could not safely do said work; and (4) in failing to reasonably and adequately ascertain the nature and extent of Mr. DeBrie's health and physical ability to perform the work for which he was hired.

■ The allegations in Hawkins' amended petition repeatedly refer to the union's "failure" to inform Hawkins of certain facts. Such allegations do not constitute a claim for negligent misrepresentation in Nebraska. In *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994), the Nebraska Supreme Court officially adopted the definition of "negligent misrepresentation" found in Restatement (Second) of Torts § 552 (1977). Section 552(1) reads:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Section 552 appears to limit a negligent misrepresentation cause of action to cases where one party supplied the other with "false information." Hawkins' amended petition, read in a light most favorable to Hawkins, indicates that the union supplied DeBrie for Hawkins' purposes, but is devoid of factual allegations that the union supplied *any* information, let alone false information, regarding DeBrie's condition. In particular, Hawkins' petition contains nothing indicating that the union made any statement regarding DeBrie's health. The allegations in Hawkins' amended petition do not allege a cause of action for negligent misrepresentation.

■ We have read the factual assertions Hawkins used as

support for its negligent misrepresentation claim in a light most favorable to Hawkins, and we can glean no other cause of action which might arise from those assertions. The trial court sustained the union's demurrer to Hawkins' negligent misrepresentation claim on the three grounds mentioned previously. We hold that Hawkins' "Second Cause of Action" fails on its face to state a claim for negligent misrepresentation. Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994); *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993); *Douglas Cty. Bank & Trust v. Stamper*, 244 Neb. 226, 505 N.W.2d 693 (1993). Therefore, we affirm the trial court's decision to sustain the union's demurrer and to dismiss Hawkins' negligent misrepresentation claim.

### 3. NEGLIGENCE

Our holding as to Hawkins' negligent misrepresentation claim leaves Hawkins with one cause of action: negligence. As noted above, the trial court sustained the union's general demurrer to Hawkins' negligence claim on three grounds. We begin by examining whether Hawkins' negligence claim was preempted by § 301 of the LMRA.

### (a) Overview of § 301 Preemption

In sustaining the union's demurrer, the trial court held, inter alia, that Hawkins' negligence claim was preempted by § 301 of the LMRA. The relevant portion of § 301 reads:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

The U.S. Supreme Court has interpreted § 301 as

preempting state law causes of action where resolution of the state law claims depends substantially upon interpreting the terms of the CBA. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). See, also, *Robinson v. Cushman, Inc.,* 242 Neb. 830, 496 N.W.2d 923 (1993). "If the state-law cause of action is 'inextricably intertwined with consideration of the terms of the labor contract,' it is preempted." *Id.* at 832, 496 N.W.2d at 925.

The Supreme Court's analysis of § 301 preemption has recognized that "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962). Preemption is necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 404, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). Accord *Barske v. Rockwell Intern. Corp.,* 514 N.W.2d 917 (Iowa 1994). "Thus, federal labor law principles must be employed to resolve disputes involving alleged violations of the [CBA] or requiring interpretation of a provision or term of the [CBA]." *Id.* at 920-21.

Section 301 does not preempt every state law claim that is connected to a CBA provision or to parties who are privy to a CBA. "The clear gist of the decisions is that LMRA § 301 applies only in the interpretation of a [CBA], where the contract deals with employee representation, or where the dispute has some connection with industrial and economic peace between labor and management." *Babb v. United Food & Commercial Workers Local 271,* 233 Neb. 826, 830-31, 448 N.W.2d 168, 171 (1989). A number of U.S. Supreme Court cases have defined the situations where § 301 preempts state law claims, and a review of those cases will be helpful in analyzing Hawkins' cause of action for negligence.

In *Allis-Chalmers Corp. v. Lueck, supra,* the employer and union were parties to a CBA which contained a self-funded disability plan administered by an insurance company. The disability plan covered employees for nonoccupational injuries, and the CBA contained provisions regarding a disability

grievance procedure. Lueck was an employee who was injured in a non-work-related accident. Lueck filed a claim with the company, but was unsatisfied with the way the company and its insurer handled his claim. Rather than submitting to the grievance procedure established in the CBA, Lueck sued the employer and its insurer in state court for bad faith handling of his insurance claim.

The Supreme Court held that Lueck's bad faith tort claim was preempted because the claim was rooted in contract and could have been pled as a contract claim under § 301. Whether the company and its insurer acted reasonably in handling Lueck's claim would have required the trier of fact to determine the respective parties' duties under the disability plan. The Court's primary concern, and the driving force behind § 301 preemption, was that analyzing Lueck's claim under state law would subject similar CBA provisions in other states to varying interpretations, undermining the Congressional goal of a unified and consistent federal body of CBA interpretation law.

In *Electrical Workers v. Hechler*, 481 U.S. 851, 107 S. Ct. 2161, 95 L. Ed. 2d 791 (1987), an employee sued her union on negligence grounds for allegedly failing to provide a safe workplace. The Supreme Court held that Hechler's claim was preempted by § 301 because a court would have to look to the CBA to determine whether the agreement in fact placed an implied duty on the union to provide Hechler with a safe workplace. Since questions of CBA interpretation were the basis for Hechler's tort claim, she could not avoid § 301 preemption by pleading her claim as a state law tort action.

The following year, in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), the Court held that an employee's claim for retaliatory discharge was not preempted by § 301. Lingle was discharged after she was injured in a work-related accident and filed a workers' compensation claim. The union representing Lingle filed a grievance pursuant to the CBA, alleging that Lingle's termination was not for "just cause," as required by the agreement. While the grievance procedure was in progress, Lingle filed a claim in state court, alleging that she was discharged in retaliation for filing a workers' compensation

claim, in violation of Illinois public policy.

The employer contended that the state law claim was preempted by § 301 because it was "inextricably intertwined" with the CBA, even though disposition of the claim did not require an interpretation of the agreement. The employer argued, and the trial court agreed, that Lingle's claim was preempted by § 301 because the same facts would be analyzed in the grievance proceeding and the state law action. The U.S. Court of Appeals for the Seventh Circuit affirmed the trial court's decision. The Supreme Court granted certiorari and reversed the court of appeals, stating:

> We agree with the court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. . . . [Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

486 U.S. at 408-10.

■■■ *Lueck*, *Hechler*, and *Lingle* provide a clear analysis of § 301 preemption. State law tort claims which have their roots in contract, and which imply duties to one party or the other based on a contract, are preempted by § 301 when the contract at issue is a CBA. In other words, "[t]o be preempted by § 301, and thereby converted into federal actions, state claims must fall into one of two categories: claims substantially *dependent* on *interpretive analysis* of the CBA, or claims based on rights

*created* by the CBA." (Emphasis in original.) *Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402 (N.D. Cal. 1991). Conversely, state law actions which merely involve factual issues identical to those being tried in a grievance proceeding under a CBA, but which do not involve interpretation of the CBA, are not preempted under § 301. *Lingle v. Norge Division of Magic Chef, Inc., supra.*

(b) Preemption of Hawkins' Negligence Claims

Hawkins cited a plethora of authority and made numerous innovative arguments supporting its contention that its negligence cause of action is not preempted by § 301. However, when one examines the substance of Hawkins' negligence claim, it becomes clear that under the Supreme Court's reasoning in *Lueck* and *Hechler*, the negligence claim is preempted.

Hawkins argues that its negligence claim would not require the trier of fact to analyze and interpret the CBA. The inherent flaw in Hawkins' argument is that, without the CBA, Hawkins would have no basis for arguing that the union owed it any duty to supply a fit and healthy worker. In its brief, Hawkins admits that the union's duty to supply Hawkins with "skilled workers" arises directly from the language of the CBA. If Hawkins and the union were not subject to *some* contractual agreement, the union would have no duty to supply workers to Hawkins. In the instant case, the contractual agreement binding the two parties is a CBA. In order to determine whether the union breached any duty owed to Hawkins, the trial court would have to define "skilled worker" as it is found in the CBA. Under § 301, as defined by *Lueck* and *Hechler*, such analysis must be conducted using federal law.

In *Lueck*, as in the case at bar, the Court was faced with a state law tort claim which arose directly from the provisions of the CBA. In finding that such tort claims are preempted by § 301, the Court stated:

Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation. The parties'

agreement as to the manner in which a benefit claim would be handled will necessarily be relevant to any allegation that the claim was handled in a dilatory manner. Similarly, the question whether Allis-Chalmers required Lueck to be examined by an inordinate number of physicians evidently depends in part upon the parties' understanding concerning the medical evidence required to support a benefit claim. *These questions of contract interpretation, therefore, underlie any finding of tort liability, regardless of the fact that the state court may choose to define the tort as "independent" of any contract question. Congress has mandated that federal law govern the meaning given contract terms. Since the state tort purports to give life to these terms in a different environment, it is pre-empted.* (Emphasis supplied.) *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218-19, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985).

We find the quoted passage from *Lueck* applicable to the case at bar. The union's duty to provide a "skilled worker" to Hawkins was created by the CBA. Defining the term "skilled worker" as it is used in the agreement would be essential to delineating the union's duties towards Hawkins. As noted by the trial court, analyzing the union's duty to supply a "skilled worker" could raise a number of questions, including the union's duty to conduct background checks on each employee and the union's duty to make each employee submit to a medical exam. To answer any of these questions, the trial court would have to interpret the language of the CBA in order to determine what duty was owed by the union to Hawkins. Any such interpretation must be performed under federal law pursuant to § 301. Therefore, Hawkins' negligence cause of action is preempted. See *Robinson v. Cushman, Inc.*, 242 Neb. 830, 496 N.W.2d 923 (1993).

The trial court's decision that Hawkins' negligence claim was preempted by LMRA § 301, standing alone, would have been sufficient to sustain the union's entire demurrer. An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993). Therefore, our finding that Hawkins' negligence claim was preempted by § 301 makes it

unnecessary to discuss any of the other grounds on which the district court sustained the demurrer.

### (c) Effect of Preemption on Hawkins' Claim

■ Our holding that Hawkins' negligence claim is preempted by § 301 does not mean that Hawkins would never be able to bring an action against the union in state court based on the facts presented in this case. Section 301 does not divest state courts of jurisdiction over actions involving CBA's. Rather, state courts have concurrent jurisdiction with federal district courts to hear federal LMRA actions. *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962). Therefore, the district court would have been a proper forum for Hawkins' § 301 claim.

■ However, the statute of limitations on a § 301 claim in Nebraska state courts is 3 years. See § 25-219. In the case at bar, the union provided DeBrie to Hawkins in May 1987. DeBrie received an award from the Workers' Compensation Court on May 17, 1988. The compensation court's order became final on November 15, 1988. The original petition filed by Hawkins does not appear in the record. Hawkins' amended petition, the earliest pleading in the record, was filed with the district court on August 25, 1992.

Under the facts presented to us in this record, Hawkins' petition was not filed within the 3-year period mandated by § 25-219. As such, Hawkins' petition cannot be further amended to state a cause of action, and the district court was correct in dismissing the petition with prejudice.

### V. CONCLUSION

Hawkins' amended petition failed on its face to state a cause of action for negligent misrepresentation. Its negligence claim was preempted by § 301 of the LMRA, and the Nebraska statute of limitations for federal claims, § 25-219, has expired on Hawkins' § 301 claim. Therefore, the district court was correct in sustaining the union's demurrer and dismissing Hawkins' amended petition with prejudice.

AFFIRMED.