NOT DESIGNATED FOR PUBLICATION

No. 128,134

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GEORGE F. GRIEB TRUST and MALINDA J. ALEXANDER TRUST,
*Appellants*,

v.

KEVIN HOSFELT, CONNIE HOSFELT, and CLINCH REALTY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Morris District Court; COURTNEY D. CRAVER, judge. Submitted without oral argument. Opinion filed April 10, 2026. Affirmed.

*J. Eric Weslander*, of Stevens & Brand, LLP, of Lawrence, for appellants.

*Joshua S. Albin*, of Adams Jones Law Firm, P.A., of Wichita, for appellee Kevin Hosfelt.

*Monte L. Miller*, of Miller & Miller, Chtd., of Emporia, for appellee Connie Hosfelt.

*Casey O. Housley* and *Joseph M. Ramirez*, of Sanders Warren & Russell LLP, of Overland Park, for appellee Clinch Realty.

Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.

ISHERWOOD, J.: The George F. Grieb and Malinda J. Alexander Trusts (collectively Grieb Trust) entered into a real estate purchase contract with Kevin and Connie Hosfelt. The couple subsequently decided to divorce, and informed Grieb Trust that they no longer intended to buy the house. Grieb Trust filed this suit against the Hosfelts and their agent, Clinch Realty, seeking to enforce the mediation clause contained

within the parties' contract. It also asserted claims for breach of contract, as well as breach of the duty of good faith and fair dealing and alleged a separate claim against Clinch Realty individually for negligent misrepresentation. The district court declined to enforce the mediation clause and determined that the Hosfelts provided adequate notice of their cancellation. In light of the dissolution of their marriage, the couple could not have met the financing contingency clause. It also granted Clinch Realty's motion for judgment on the pleadings with respect to the claim of negligent misrepresentation. Grieb Trust now brings this appeal and argues that the district court reached each of its conclusions in error. Following a careful review of the record and a thorough analysis of each claim raised for our consideration, we are not persuaded that the district court erred in deciding the issues adversely to Grieb Trust. Accordingly, the decisions of the district court are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Grieb Trust entered into a residential real estate contract with the Hosfelts for a home in Council Grove, Kansas. The Hosfelts verified that they were preapproved for a loan on the purchase but failed to specify the lender. The contract required them to make a good-faith effort to obtain the necessary financing within 45 days from the effective date of the contract or within 5 days prior to closing, whichever occurred earlier. Its terms also mandated resolution through mediation in the event of a dispute and permitted the prevailing party in any enforcement action to recover attorney fees, court costs, and expenses.

Cathy Sherman, Connie Hosfelt's sister and an agent with Clinch Realty, assisted the Hosfelts in navigating the transaction. The sibling relationship was not disclosed to Grieb Trust. Roughly two weeks after the contract was signed, Connie informed Grieb Trust that the couple planned to divorce so they were unable to obtain the necessary financing and, therefore, could not move forward with the purchase agreement. Grieb

Trust requested documentation that evidenced the Hosfelts were denied joint financing. Only Connie attempted to honor their request, but the forms she produced demonstrated that she was denied a loan in her individual capacity. Grieb Trust insisted on mediation as contemplated by the terms of the parties' contract, but the Hosfelts refused. Grieb Trust managed to mitigate its damages by selling the property, albeit for significantly less than the purchase price contemplated under its agreement with the Hosfelts.

Grieb Trust ultimately initiated this litigation against the Hosfelts and Clinch Realty for breach of contract and the duty to act in good faith and engage in fair dealing. It brought a separate, independent claim against Clinch Realty for negligent misrepresentation. Grieb Trust sought $34,419.08 in damages, plus an unspecified amount for attorney fees, court costs, and other legal expenses incurred toward enforcement of the contract.

Connie filed an answer and asserted that the buyer's inspection revealed unacceptable conditions on the property that Grieb Trust then agreed to repair. She also noted that a good faith effort was made to obtain financing through two separate lending institutions but both denied her application. It was her contention that Grieb Trust was notified of that development within the timing parameters specified in the parties' agreement.

Connie and Kevin separately moved the district court for a determination of whether the requisite contingencies were satisfied to form an enforceable contract. Clinch Realty requested a judgment on the pleadings citing as its basis that it was not a party to the contract and Grieb Trust failed to allege facts which would support its negligent misrepresentation claim. Finally, Grieb Trust moved the district court to compel mediation.

The district court ruled favorably for Clinch Realty with respect to both of its claims, resulting in its release from the case. It also granted both motions filed by the Hosfelts and held that the contract was unenforceable given that (1) the couple's cancellation was timely communicated since it occurred within the 20-day inspection/due diligence period, and (2) the required contingencies were not met because once they initiated their divorce no lender would approve their joint loan application. Relatedly, the district court reasoned that because there was not an enforceable contract, there were no grounds to compel mediation and denied Grieb Trust's request for the same.

Grieb Trust now brings its case before this court for a determination of whether the district court erred in granting the Hosfelts' motions and in refusing to order that the dispute be resolved via mediation as contemplated by the parties when they negotiated the terms of the contract.

LEGAL ANALYSIS

I. *The district court properly concluded that the parties' contract was not enforceable.*

When the existence of a contract is contested or the content of its terms permits more than one inference, a question of fact is at issue. *Benchmark Property Remodeling v. Grandmothers, Inc.*, 319 Kan. 227, 237, 553 P.3d 974 (2024). We review a district court's factual determinations for substantial competent evidence. *Duling v. Mid American Credit Union*, 63 Kan. App. 2d 428, 435, 530 P.3d 737 (2022). To the extent the legally relevant facts are undisputed, however, the existence and terms of a contract are questions of law subject to de novo review. *Simpson v. City of Topeka*, 53 Kan. App. 2d 61, 68, 383 P.3d 165 (2016). When called upon to interpret and assess the legal effect of a written instrument, including whether it is ambiguous, appellate courts exercise unlimited review. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

Grieb Trust asserts that the district court erred by granting relief based on Kevin's "Motion to Determine Validity of Purchase Agreement" and Connie's "Motion to Determine if Contingencies Were Satisfied to Form an Enforceable Contract" because such motions purportedly are not recognized by Kansas' Rules of Civil Procedure. It further contends that genuine issues of material fact remained, therefore the district court was precluded from resolving the motions favorably to the Hosfelts as the moving party.

Kevin counters that the district court's ruling is sound because the contract between the parties only imposed obligations on "the Buyers," a designation that contemplates and is limited to a joint entity or, in this instance, him and Connie in their capacity as a couple. It does not extend to either of them individually. Connie buttresses Kevin's support for the district court's decision with the additional claim that financing was a condition precedent to the enforceability of the contract and the couple's breakup undermined their ability to secure the required funding, thus the contract was not enforceable. We are satisfied that the district court properly concluded that Grieb Trust was not entitled to the relief it sought to obtain.

*Analysis*

The position taken by Grieb Trust runs counter to the longstanding practice by Kansas courts of declining to give the caption of a pleading priority over its content. *In re Estate of Heiman*, 44 Kan. App. 2d 764, 769, 241 P.3d 161 (2010) (courts should treat petitions, motions, or other papers for what they are based on their substance rather than on how they are captioned or titled); *Smith v. State*, 22 Kan. App. 2d 922, 925, 924 P.2d 662 (1996) (permitting the substance of a pleading to be trumped by its caption is neither legally sound nor supportive of judicial economy).

In defining the key term here, the list of dispositive motions at K.S.A. 60-2008(b) includes motions to dismiss, for judgment on the pleadings, for summary judgment or

partial summary judgment, or for judgment as a matter of law. It also includes "any motion determined by a judge to be seeking any disposition described in this subsection, regardless of the title assigned to such motion at the time of filing." K.S.A. 60-2008(b). Here, the district court treated the motion at issue as requests for a judgment on the pleadings, thereby placing them within the K.S.A. 60-2008(b) definition of dispositive motions.

When a district court enters a ruling pursuant to K.S.A. 60-212(c) it amounts to a finding that the moving party is entitled to judgment on the face of the pleadings themselves because, on the admitted facts, the plaintiffs have failed to state a cause of action. The judgment serves as a means of disposing of the case as a matter of law because no real issue remains to be tried. Kansas appellate courts have unlimited review of a judgment on the pleadings. *Tillman v. Goodpasture*, 313 Kan. 278, 281, 485 P.3d 656 (2021).

The district court accurately concluded that the contingencies of the contract—or conditions precedent—were not satisfied and thus the contract was cancelled. A condition precedent is something that the parties agree must transpire before a justiciable right to enforce the contract exists. Stated another way, without performance of this condition the contract is unenforceable. *Geer v. Eby*, 309 Kan. 182, 194, 432 P.3d 1001 (2019) (quoting *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, 1020, 677 P.2d 1004 [1984]).

From the pleadings, the district court was able to determine the boundaries of any dispute over the condition precedent. Specifically, Grieb Trust noted in its petition that Connie provided documentation to evidence her pursuit of a lender and the subsequent denial of her loan applications. Grieb Trust did not seek to contest the ability of each Hosfelt, in their individual capacity, to finance the purchase. That would have presented a question only resolvable at the summary judgment stage and not appropriate for the district court to resolve through a judgment on the pleadings. Rather, Grieb Trust argued

that the Hosfelts failed to demonstrate that they attempted, in good faith, to obtain the necessary financing together but were unsuccessful in their efforts. The Hosfelts question their legal obligation to attempt to finance the purchase together amidst their divorce, or even the viability of obtaining financing under those circumstances. Grieb Trust presented the Hosfelts with an itemized breakdown of the $34,419.08 in damages it incurred when it was forced to relist and sell the property for considerably less than the price contemplated by the contract.

Grieb Trust directs our attention to *Bruyere v. Jade Realty Corp.*, 117 N.H. 564, 375 A.2d 600 (1977), a case involving a couple who decided to divorce during their homebuying process and pursued a recoupment of their deposit. This case offers a notable example of the obligations that parties owe one another under such circumstances. *Bruyere* tackles our issue in a mirror image, with the buyer trying to enforce the contract against the seller. When Jacqueline Bruyere decided to separate from and divorce her husband, she proposed to a lender that she alone continue with a pending contract to purchase a home. The bank withdrew financing with the explanation that one income could not carry the mortgage in question. Bruyere filed suit to recover her deposit but the *Bruyere* court held that the financing provision did not provide her with a cause of action against the sellers for that relief. Rather, the purpose of the financing clause was "merely to protect prospective purchasers from committing a technical breach of contract due to their inability . . . to secure the funds necessary to complete the purchase." 117 N.H. at 565-66.

> "The defendant herein contracted with a married couple. The conditional financing provision was inserted under the understanding that the mortgage would be sought by two wage earners. The seller was able to weigh the plaintiffs' likelihood of success under these conditions, and accepted the studied risk of taking its property off the market despite the possibility that the transaction might fail. We do not believe the intent of the financing clause was to place upon the seller the hazard that the plaintiffs would alter

their circumstances, and therefore their borrowing potential, through a voluntary act of their own." 117 N.H. at 566.

The *Bruyere* court reasoned that the seller already assumed a risk by contracting with the Bruyeres and taking the home off the market and it refused to impose the further burden of returning the deposit. The *Bruyere* court's determination is highly persuasive; the risk of loss falls squarely on the buyer who remits the deposit. Again, "the intent of the financing clause is to protect the buyer from involuntary breach." 117 N.H. at 566. But when financing "fails because of some action voluntarily undertaken by the buyer, we find that the risk of the failure of the transaction is properly imposed upon the party who so acts, and not upon the innocent seller." 117 N.H. at 566. The *Bruyere* court's reasoning is sound.

Section 14 of the contract at issue in this case sets forth remedies in the event of either party defaulting on the contract. A default by the buyer allows the seller to:

> "[t]erminate this Contract by written notice to BUYER and, at SELLER's option, either retain the Earnest Money as liquidated damages as SELLER's sole remedy (the parties recognizing that it would be extremely difficult to ascertain the extent of actual damages caused by BUYER's breach, and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine) as provided in this Contract, or pursue any other remedy and damages available at law or in equity."

Thus, the Hosfelts would encounter difficulties if, as the plaintiffs did in *Bruyere*, they attempted to recover their earnest money. Under the contract, Grieb Trust had the option to retain the earnest money as its sole remedy. The risk of losing their earnest money was on the Hosfelts here, just as it was on the buyers in *Bruyere*.

But the *Bruyere* court was also correct that a financing clause serves to protect prospective purchasers from committing a technical breach of the contract due to their

inability to secure the funds necessary to complete the purchase. And this persuasive reasoning leads to the central claim of Grieb Trust's petition, that the Hosfelts failed to demonstrate that they were unable to secure a financing agreement to purchase the house together despite their divorce.

The district court correctly found that the contract was timely cancelled because the required contingencies were not met and properly refused to impose a requirement upon the Hosfelts to reapply for a loan despite their divorce. Again, the reasoning of the *Bruyere* court has some usefulness here. It interpreted the financing clause as not providing the buyer with a cause of action against the seller to recover a deposit but instead protected the buyers from being sued by the sellers over a failure to secure a loan. "[T]he intent of the financing clause is to protect the buyer from involuntary breach." 117 N.H. at 566. The *Bruyere* court's persuasive reasoning was that the buyer could use the financing clause to defend against a breach of contract claim by the seller. Here, the district court found that this is exactly what happened. The Hosfelts used the financing clause to defend against the breach of contract claim Grieb Trust filed against them.

The district court's assessment of the pleadings focused on the uncontested fact that the preapproval the Hosfelts secured as a couple was rescinded. The contract was contingent upon the buyers obtaining financing and this contingency of the contract was not satisfied. The couple was under no legal obligation to attempt to secure financing, during their divorce, on a home they would never inhabit together. The district court did not err.

II. *The district court did not err when it granted Clinch Realty's motion for judgment on the pleadings.*

In its second claim of error, Grieb Trust challenges the district court's dismissal of its claim against Clinch Realty for negligent misrepresentation. Clinch Realty asserts that

dismissal was appropriate because the fact that one of their realtors, Cathy Sherman, was sisters with the buyer, Connie Hosfelt, had no bearing on the contract. We are not convinced this sibling relationship provided Grieb Trust with a valid cause of action.

Initially, Grieb Trust brought a claim against Clinch Realty for breach of contract and the duty of good faith and fair dealing. The district court determined that the contract was between the buyer and seller, thus, Clinch Realty was not a party to it and any claims Grieb Trust attempted to bring against it in this regard failed. Grieb Trust does not appeal this part of the district court's decision, leaving negligent misrepresentation as its sole remaining claim against Clinch Realty.

Negligent misrepresentation occurs when: (1) a defendant supplies false information in a transaction where they have a pecuniary interest; (2) a defendant failed to exercise reasonable care or competence in obtaining or communicating the false information; (3) the person who relies upon the information is the person for whose benefit and guidance the information is supplied; and (4) damages occur in a transaction that the defendant attempted to influence. *Stroud v. Ozark Nat'l Life Ins. Co.*, 320 Kan. 180, 203, 564 P.3d 725 (2025) (citing the Restatement [Second] of Torts § 552 [1977], as adopted in *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604, 876 P.2d 609 [1994]).

The district court correctly granted judgment on the pleadings to Clinch Realty because there is no indication from the record that it ever supplied any false information. "'[N]egligent misrepresentation can never be premised on a claim of nondisclosure because a failure to speak does not satisfy an essential element of the claim: affirmatively supplying false information.'" *Stroud*, 320 Kan. at 209 (applying the elements as stated in *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 [2013]). Citing *Stechschulte*, Grieb Trust contends that the omission in this case is the functional equivalent of supplying false information. Its argument in this regard is premised on facts unique to that case. Specifically, *Stechschulte* involved a house marred by significant water damage

10

and encumbered with ongoing leaks. The realtor provided a seller's disclosure form to the buyer that made no mention of any leaks, repairs, or stains. The *Stechschulte* court held that the buyers' negligent misrepresentation claim could survive summary judgment. 297 Kan. at 27.

Grieb Trust incorrectly reads *Stechschulte* as holding that an affirmative misrepresentation is not required as an element of negligent misrepresentation. To the contrary, the *Stechschulte* court held that the realtor made an affirmative statement to the buyers when she provided them with paperwork from which she deliberately omitted information that was in her possession. 297 Kan. at 27. In other words, a disclosure form which fails to mention leaks, repairs, and stains is the functional equivalent of a disclosure form that affirmatively states that the property contains no such defects. A realtor is not free to omit mention of or remain silent on these known defects. 297 Kan. at 27.

Accordingly, Grieb Trust's argument falls short for two reasons. First, our Supreme Court has had the opportunity to revisit *Stechschulte* to either expand or limit its holding and it opted to reaffirm the principle that a nondisclosure cannot sustain a claim of negligent misrepresentation. *Stroud*, 320 Kan. at 207-09 (extensively citing and discussing *Stechschulte*). That is, our Supreme Court has not interpreted *Stechschulte* as Grieb Trust does. Compare *Broberg v. Boling*, 183 Kan. 627, 634-35, 331 P.2d 570 (1958) (affirmative misrepresentation), with *Wolf v. Brungardt*, 215 Kan. 272, Syl. ¶ 4, 524 P.2d 726 (1974) (fraud by silence); see *Stechschulte*, 297 Kan. at 19-22 (discussing elements of separate and distinct torts of fraudulent inducement, fraud by silence, and negligent misrepresentation); see also *Outlook Windows Partnership v. York Int'l Corp.*, 112 F. Supp. 2d 877, 896 (D. Neb. 2000) (distinguishing negligent misrepresentation claim from nondisclosure claim and holding that failure to disclose information is governed by Restatement of Torts [Second] § 551 [1977]); *Sain v. Cedar Rapids Community School Dist.*, 626 N.W.2d 115, 128 (Iowa 2001) (the tort of negligent

misrepresentation does not apply to the failure to provide information, but to the disclosure of information); *Hawkins Const. Co. v. International Ass'n Local #21*, 3 Neb. App. 238, 243, 525 N.W.2d 637 (1994) (allegations regarding defendant's failure to inform plaintiff of certain facts did not constitute a claim for negligent misrepresentation).

Second, even if *Stechschulte* did represent an exception that allowed the facts here to support a claim of negligent misrepresentation, Grieb Trust still cannot prevail because it has not demonstrated materiality. The *Stechschulte* court was focused on disclosures related to "'any other conditions that may materially and adversely affect the value or desirability of the property.'" 297 Kan. at 15 (quoting *Osterhaus v. Toth*, 291 Kan. 759, 763, 249 P.3d 888 [2011]). Thus, a real estate agent may be liable for negligent misrepresentation because of failure to disclose adverse property information known to the agent such as leaks and water damage. *Stechschulte*, 297 Kan. at 17, 26-27.

The fact that Cathy Sherman and Connie Hosfelt are sisters is not adverse property information. First, it is not a fact that pertains to the property, and it is not adverse to the transaction in the way that structural defects in the home are adverse. From a purely objective standpoint a buyer's realtor represents the buyer in the transaction and, as such, presumably already carries a sense of loyalty to their client. Any partiality resulting from a sibling relationship would merely intensify that preexisting loyalty. Subjectively, Grieb Trust fails to establish that the siblings' relationship negatively impacted the transaction in this case. Connie cancelled the contract because she and her husband divorced. Her sister's profession as a realtor did not give rise to that development. The district court properly concluded that Clinch Realty was under no obligation to disclose the sisters' relationship.

The residential purchase agreement carried a financial contingency clause that simply could not be met when the Hosfelts, as the prospective buyers, decided to divorce

and go their separate ways. While that development necessitated a subsequent sale by Grieb Trust to mitigate its damages, at a price it considered to be less than optimal, it nevertheless did not give rise to recoverable claims against the Hosfelts and Clinch Realty. Accordingly, the decisions of the district court are affirmed.

Affirmed.