**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IAN MCCRAY, an individual, and on behalf of himself, and on behalf of all other persons similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> MARRIOTT HOTEL SERVICES, INC., a Delaware corporation; SJMEC, INC., a California corporation, *Defendants-Appellees*. | No. 17-15767 <br><br> D.C. No. 5:16-cv-02092-NC <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Nathanael M. Cousins, Magistrate Judge, Presiding

Argued and Submitted June 11, 2018
San Francisco, California

Filed August 31, 2018

Before: Mary M. Schroeder, Ronald M. Gould,
and Albert Diaz,[*] Circuit Judges.

---

[*] The Honorable Albert Diaz, United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

Opinion by Judge Diaz;
Dissent by Judge Schroeder

## SUMMARY**

### Labor Law

The panel vacated the district court's grant of summary judgment in favor of the defendant and its denial of the plaintiff's motion to remand to state court an action alleging violation of a City of San Jose minimum wage ordinance.

The defendant had removed the case from state court on the basis that the plaintiff's claims were preempted by § 301 of the Labor Management Relations Act. The panel held that the district court lacked subject matter jurisdiction to hear the case, which amounted to an interpretive challenge to the San Jose ordinance, rather than a lawsuit that required substantial analysis of the plaintiff's union's collective-bargaining agreement. The panel remanded with instructions for the district court to return the case to state court for further proceedings.

Dissenting, Judge Schroeder wrote that she would affirm the district court because the case substantially depended upon analysis of the terms of the collective-bargaining agreement, which should be interpreted in accordance with federal law.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James L. Pagano (argued) and Ian A. Kass, Pagano & Kass APC, San Jose, California, for Plaintiff-Appellant.

William J. Dritsas (argued), Seyfarth Shaw LLP, San Francisco, California; Michael W. Kopp, Seyfarth Shaw LLP, Sacramento, California; for Defendants-Appellees.

Paul L. More, McCracken Stemerman & Holsberry LLP, San Francisco, California, for Amicus Curiae Unite Here Local 19.

**OPINION**

DIAZ, Circuit Judge:

When the City of San Jose enacted an ordinance that established a minimum wage of $10/hour, the San Jose Marriott Hotel continued to pay Ian McCray and other employees less. It turned out that McCray's union had negotiated with Marriott and agreed to waive the ordinance's minimum-wage requirement so that it could bargain for other benefits for its members.

McCray sued Marriott in state court. He says that the ordinance doesn't allow for waiver, and so Marriott owes him the difference between what he was paid and the new minimum wage. Marriott removed the case to federal court on the basis that McCray's claims are preempted by § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. The district court concluded that McCray failed to first exhaust his claim through a required grievance process and granted summary judgment to Marriott.

Whether McCray's claims were exhausted or not, the district court was without jurisdiction to hear this case. While we recognize the strong preemptive force of § 301, McCray's lawsuit amounts to an interpretive challenge to the San Jose ordinance, not one that requires substantial analysis of his union's collective-bargaining agreement. We therefore vacate the district court's denial of remand and grant of summary judgment. We remand this case so that it may be returned to state court for further proceedings.

I.

In 2012, voters in San Jose, California, considered a ballot initiative that would establish a new minimum wage for most of the city's workers. Under the proposed ordinance, employees would be paid a minimum wage of $10 an hour, subject to cost-of-living adjustments over time. *See* San Jose, Cal., Mun. Code § 4.100.040. The ordinance also purported to give employers and employees the ability to waive the minimum wage requirements through collective bargaining. "To the extent required by federal law," the proposed law provided, "all or any portion of the applicable requirements of this Chapter may be waived in a bona fide collective bargaining agreement, provided that such waiver is explicitly set forth in such agreement in clear and unambiguous terms." *Id.* § 4.100.050.

Meanwhile, Ian McCray was employed at the Marriott Hotel in San Jose. There, he performed several hospitality-related jobs, including working as a busser, then later a server, in the hotel's restaurant. As a busser, McCray received an hourly wage of $10.80. When McCray became a server, his hourly wage decreased to $9, but he generally wound up taking home more pay than he had as a busser because of tips he received from customers.

Throughout his employment with Marriott, McCray was represented by the union Unite Here, Local 19. The terms of McCray's employment were governed by a collective-bargaining agreement (a "CBA") entered into between Unite Here and Marriott. Anticipating the passage of San Jose's minimum wage ordinance, Marriott and the union executed an addendum to the CBA, prospectively opting out of the minimum wage requirement. The waiver explained that should the ordinance become law, the "Employer and the Union, through collective bargaining, have agreed to explicitly waive as part of the parties['] collective bargaining agreement, all provisions and requirements of the City of San Jose Minimum Wage Ordinance." EOR 119. The ballot initiative passed, and the ordinance and waiver took effect in 2012.

Shortly thereafter, McCray, then earning $9 an hour as a server, spoke with a Marriott human resources employee and a representative from his union and asked why he was being paid less than the new minimum wage.[1] McCray was told that the union had opted out of the minimum wage ordinance so that it could secure other benefits, such as healthcare, for its members.

Apparently not satisfied with that answer, McCray filed this lawsuit in state court in Santa Clara County. McCray seeks to represent himself as well as similarly situated Marriott employees in a class action. His complaint asserts a bevy of wage and hour claims that flow from a single, simple theory: the San Jose ordinance requires Marriott to

---

[1] Tips that employees like McCray might receive don't count toward the minimum wage for purposes of the ordinance.

pay its employees a minimum wage of $10 an hour; McCray and others received less.

Marriott removed this case to federal court. In support of removal, Marriott argued that § 301 of the LMRA preempts McCray's claims and thus jurisdiction to hear this case lies in federal court. The district court agreed and denied McCray's motion to remand. Next, the court granted summary judgment in favor of Marriott. It held that McCray couldn't pursue his claims in court because he had failed to exhaust the mandatory administrative grievance procedure set forth in the CBA. This appeal followed.

## II.

We begin with the issue of preemption. The question here is whether the LMRA preempts McCray's state law claims, thus allowing this case to be heard in federal court. Preemption is a matter of subject matter jurisdiction, which we review de novo. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1315 (9th Cir. 1998).

Section 301 of the LMRA vests federal courts with jurisdiction to hear suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). By enacting the LMRA, Congress completely preempted state law for certain labor-related claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393–94 (1987).

A claim that falls within § 301's ambit "is considered, from its inception, a federal claim," and so is subject to removal based on federal question jurisdiction. *Id.* at 393; *see also* 28 U.S.C. §§ 1331, 1441. In these areas, "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (internal quotation marks and footnote omitted). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar*, 482 U.S. at 396 n.10.

The distinction between claims that are preempted and claims that are not doesn't "lend[] itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 n.18 (1994). In an effort to clear the waters, our prior decisions have set out a two-part test to determine when § 301 preemption applies. Section 301 preempts claims that are "founded directly on rights created by collective-bargaining agreements," *Caterpillar*, 482 U.S. at 394, as well as claims that are "substantially dependent on analysis of a collective-bargaining agreement," *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987). So when faced with a claim that may implicate a CBA, a court must first ascertain "whether the

asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (alteration omitted) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

On the other hand, if the court determines that the right at issue exists independently of the CBA, it must then ask "whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* (internal quotation marks omitted). A claim that substantially depends on a collective-bargaining analysis is preempted. In other words, § 301 generally preempts state law claims that implicate a collective-bargaining agreement, except for claims that (1) arise independently of a CBA, and (2) don't substantially depend on analysis of a CBA.

A.

We first decide whether McCray's complaint asserts claims that exist solely as a result of the CBA, or if the rights at issue are conferred independently by state law. In doing so, we consider whether "the legal character of a claim" is rooted in the CBA. *Burnside*, 491 F.3d at 1060 (internal quotation marks and emphasis omitted). A defendant can't rely on a CBA as an aspect of her defense simply to "inject a federal question into an action that asserts what is plainly a state-law claim." *Id.* (alteration and internal quotation marks omitted).

McCray has plainly asserted claims arising under California state law and the San Jose ordinance. His case rests on the premise that Marriott didn't pay McCray and other workers the minimum wage that the ordinance

requires. The rights at issue—that is, the right to be paid the $10 hourly minimum wage and the right to receive back pay and other compensation for Marriott's alleged failure to do so—arise under state and local law and would exist with or without the CBA.

*Burnside*'s fact pattern is instructive. There, the plaintiff employees sought pay for time spent traveling between designated meeting points and their actual job sites. 491 F.3d at 1055. The complaint made no reference to CBAs the workers' unions had entered into with their employer. Instead, it asserted claims under California state law, including some of the same provisions here, as well as a common law claim for conversion. *See id.* at 1058. The employer argued that certain provisions contained in the CBAs effectively waived the obligation to pay workers for their travel time. *See id.* at 1064.

We held that the claims in that case were independent rights asserted under state law and did not depend on the CBAs. In doing so, we specifically rejected the employer's argument that the fact that a right could theoretically be waived meant that the right necessarily depended on a CBA. *See id.* at 1064–65. The right to be paid according to state law, we explained, is "one that came into existence entirely independently of the CBA, and that remains in existence, independently of the CBA" unless and until the CBA waives it. *Id.* at 1064. The employees' claimed right to be paid for their travel time was "based on a right conferred as a matter of state law . . . not by the CBAs," and the fact that the state law "contain[ed] an opt-out provision [did] not change our analysis." *Id.* at 1070.

So too here. The San Jose ordinance and relevant state law afford workers in San Jose the right to be paid the minimum wage established by the ordinance, subject to the

requirements of California law.  That the ordinance contains an opt-out mechanism doesn't change the fact that these rights originate outside of the CBA.  We therefore hold that McCray's claims arise independently under state law and are not subject to § 301 preemption on that basis.

## B.

Because McCray's claims arise independently under state law, we next ask whether his claims substantially depend on an analysis of the CBA.  To answer this, we must decide if McCray's case will require a court to merely "look to" the CBA or instead "interpret" its terms.  *Compare Livadas*, 512 U.S. at 125, *with Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108–09 (9th Cir. 2000).   "[T]he mere need to 'look to' the collective-bargaining agreement . . . is no reason to hold [a] state-law claim defeated by § 301."  *Livadas*, 512 U.S. at 125.  It is only "state-law actions that require interpretation of labor agreements" that are preempted.  *Balcorta*, 208 F.3d at 1108 (internal quotation marks omitted).

"[T]he line between reference to and interpretation of an agreement may be somewhat hazy . . . ."  *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993). But "the totality of the policies underlying § 301— promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards— guides our understanding of what constitutes 'interpretation.'"  *Balcorta*, 208 F.3d at 1108–09.[2]

---

[2] An en banc panel of this court recently explained that "[s]etting minimum wages, regulating work hours and pay periods, requiring paid

"[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* at 1108. That's why in *Livadas*, there was no "interpretation" afoot when resolving the case because the court only needed to look to the CBA to determine the plaintiff's undisputed pay rate in order to calculate damages. *See* 512 U.S. at 124–25. The same goes for *Burnside*, where the court simply had to flip through the CBA and ask whether a valid waiver was anywhere to be found. *See* 491 F.3d at 1066–68.

Our recent decision in *Kobold* helps further sharpen the look-to/interpret distinction. That case involved preemption analysis in three consolidated cases, two of which are particularly relevant here. First, *Kobold* considered a claim brought by an operating nurse who sought to receive time-and-a-half pay for certain "extra" shifts she'd worked. 832 F.3d at 1034–35. The nurse asserted claims under Oregon state law, which we assumed arose independently from the CBA (thus satisfying step one of *Burnside*). We nevertheless found that § 301 preempted her claims because resolving her case would require interpretation of the CBA. *Id.* at 1035–36. This was so because before the court "could calculate the total *amount* Kobold is owed, it must determine which of the shifts she worked qualified for premium pay." *Id.* at 1035. And the definition of which shifts qualified for

---

and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states, and will naturally result in labor standards that affect workers differently from one jurisdiction to the next . . . ." *Alaska Airlines Inc. v. Shurke*, No. 13-35574, 2018 WL 3636431, at *6 (9th Cir. Aug. 1, 2018) (en banc). That case involved a question of preemption under the Railway Labor Act, 45 U.S.C. §§ 151–65, 181–88, whose preemptive force is "virtually identical" to that of the LMRA. *Id.* at *1 n.1.

premium pay was contained not within the state law under which the action arose, but rather was based on the terms of the CBA. *Id.* at 1035–36. Because there was a live dispute over the meaning of a particular provision of the relevant CBA, resolving the case would mean that the court "must interpret, not just refer to or look at" the agreement. *Id.* at 1036. Specifically, the CBA did not "directly and clearly explain what constitutes a 'change of schedule,' nor how an agreement between [the hospital] and a nurse is to be made." *Id.* Since interpretation of the CBA's terms would be necessary, preemption was appropriate.

By contrast, *Kobold* also considered claims brought by a group of truck drivers who claimed that their employer had failed to make timely premium payments to a benefit plan negotiated under a CBA. *Id.* at 1037. The plaintiffs asserted claims under state employment and labor laws, which provided that those sorts of deductions must be paid consistent with the time and manner set out in the CBA. *Id.* at 1037–38. The employer claimed that resolving the dispute would require the district court to "interpret several key provisions of the contract," including the employer's "obligations to make any deductions from employee's paychecks; the amount and frequency of deductions taken; increases in monthly premium changes; coverage requirements of employees," and other issues. *Id.* at 1040.

We rejected that argument, explaining that "[n]one of these matters require CBA interpretation" because the CBAs "unambiguously specif[ied]" the employer's obligation to deduct funds from employee paychecks; "the amount and frequency of the deductions; to whom the deduction must be remitted and for what purpose; and the terms of employee eligibility for the health benefits." *Id.* In other words, reading and applying relevant, unambiguous provisions of

the CBA required the court to only "look to," rather than "interpret," the agreement. *See also Alaska Airlines*, 2018 WL 3636431, at \*12 (no preemption in dispute over employee's banked vacation days, which existed "only by virtue of her having earned them in accordance with a workplace policy incorporated in the CBA").

This same reasoning applies here. McCray's theory of liability goes like this: The San Jose ordinance establishes a $10 minimum hourly wage. Marriott paid McCray and other workers less than that. The CBA (which governs McCray's employment) purports to waive the minimum wage requirement. But the ordinance only allows waiver "[t]o the extent required by federal law"—and no federal law requires the minimum wage requirement to be waivable. So, McCray argues, the waiver is ineffective (no matter what it says), and McCray is owed the difference between what he was actually paid and what the ordinance requires.

At bottom, this case is a matter of statutory interpretation. The primary task of the court deciding this case will be to determine whether the minimum wage established by the ordinance is waivable. If the court determines it can't be waived, then it's irrelevant whether the CBA contains a waiver. On the other hand, if the minimum wage is subject to waiver, the court will need only "look to" the CBA to determine whether it contains a valid waiver.

"[R]eliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." *Alaska Airlines*, 2018 WL 3636431, at \*12. So far, there's been no dispute about the waiver's validity. Aside from claiming that the waiver conflicts with the

ordinance, McCray has pointed to no defect in the document itself. This would be a different case if, for example, McCray had argued that the text of the waiver was not sufficiently "clear and unambiguous" to satisfy the ordinance or suffered some other flaw that rendered it invalid. But McCray has made no such argument. Since the case he's brought will only require a court to check and see whether the CBA contains a waiver, this isn't a case where a court must do "more than 'consider,' 'refer to,' or 'apply'" the agreement. *Balcorta*, 208 F.3d at 1108.

The degree of analysis of the CBA this case requires isn't altogether different from checking an agreement to identify, for example, an employee's pay rate. *See Livadas*, 512 U.S. at 124–25. And in many respects, it presents the inverse of the issue in *Burnside*: there, we said that looking at a CBA to see whether it contained a valid waiver didn't require "interpreting" the agreement. 491 F.3d at 1066–68, 1074. We fail to see why the result should be any different here simply because a waiver does exist.

Finally, we recognize that although McCray hasn't yet challenged the substance of the waiver, he may attempt to do so later in the litigation. But that speculative possibility isn't enough to warrant preemption at this early stage. We have stressed in this context the principle that "the plaintiff is the master of the complaint, and that if the defendant could engineer the forum in which the claim shall be litigated based on the substance of his defense, the plaintiff would be master of nothing." *Id.* at 1060 (internal quotation marks omitted).

Additionally, we recognized in *Burnside* (where we found that the claim wasn't preempted) that it was "of course possible . . . that some dispute we cannot now foresee will arise in the course of computing damages that will require

the interpretation of the CBAs." *Id.* at 1074 n.19. But that possibility did not create a basis for preemption. In fact, we specifically rejected the *Burnside* employer's invitation to "preempt[] the entire cause of action now, even though the likelihood is that no dispute requiring interpretation of the CBAs will ever arise," because doing so "would turn section 301 preemption doctrine[ ]into the 'mighty oak' we know it is not." *Id.* (quoting *Livadas*, 512 U.S. at 122). As McCray has framed his claims (and argued them thus far), his case will rise or fall based on interpretation of the local ordinance, not interpretation of the CBA. The possibility that things could change down the road is simply not enough to warrant preemption now.[3]

## III.

In sum, the district court didn't have jurisdiction to hear this case, because the LMRA doesn't preempt McCray's claims. The district court therefore erred in denying McCray's motion to remand this case to state court and shouldn't have reached the merits of Marriott's motion for summary judgment. *See MacKay v. Pfeil*, 827 F.2d 540, 543 (9th Cir. 1987). Accordingly, we vacate the district court's denial of McCray's motion to remand and also vacate its grant of summary judgment in favor of Marriott. Upon

---

[3] Of course, should McCray change tack later in the course of litigation and make an argument directly challenging the CBA, Marriott would then have the opportunity to again pursue removal. *See* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

remand, the district court should return this case to state court for further proceedings.

**VACATED          AND          REMANDED          WITH INSTRUCTIONS.**

---

SCHROEDER, Circuit Judge, dissenting:

This case is about whether the employer is entitled to rely on provisions of the collective bargaining agreement ("CBA") that establish a contractual hourly wage rate, as well as a waiver, or "opt out," of the City of San Jose's minimum wage ordinance. The CBA's hourly rate, a dollar lower than the City's minimum wage, was negotiated in connection with the employer's providing health care benefits. The District Court correctly held that the case substantially depends upon analysis of the terms of the CBA that should be interpreted in accordance with federal law.

The District Court followed the Supreme Court's decision in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), which says as much. In *Allis-Chalmers*, the Supreme Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim [of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)], . . . or dismissed as pre-empted by federal labor-contract law." 471 U.S. at 220 (citing *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557 (1968)); *see also Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000) ("When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption . . . .

However, § 301 does preempt state law claims that are substantially dependent on an analysis of a collective bargaining agreement.") (citations and internal quotation marks omitted).

The majority nevertheless holds that the case must be remanded to state court for the application of state law. The majority does so on the basis of Plaintiff McCray's theory that we must first interpret the City's ordinance to determine whether it means, as McCray argues, that it can only be waived by some overarching federal law, rather than by a CBA. The majority concludes that because that initial question involves interpretation of the ordinance under state law, the entire case must be resolved in state court.

Even assuming that would be a plausible result in some cases, in this case that initial issue concerning interpretation of the ordinance raises no serious question. The ordinance on its face refers to waivers in CBAs; it states, "all or any portion of the applicable requirements of this Chapter may be waived in a bona fide collective bargaining agreement, provided that such waiver is explicitly set forth in such agreement in clear and unambiguous terms." And the explanatory material accompanying the ordinance even provides sample language that can be used in CBAs to accomplish a waiver.

Federal labor law does not require unions and employers to agree to specific substantive provisions in CBAs, such as a minimum wage opt-out. Federal labor law merely requires unions and employers to engage in the collective bargaining process to reach agreement on terms. They did so here. As the Supreme Court stated in *Metropolitan Life Insurance Co. v. Massachusetts*, "The [National Labor Relations Act ("NLRA")] is concerned primarily with establishing an equitable process for determining terms and conditions of

employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." 471 U.S. 724, 753 (1985); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20 (1987). Furthermore, similar opt-out provisions have been uniformly upheld under federal law. *See, e.g.*, *Livadas v. Bradshaw*, 512 U.S. 107, 131–32 (1994) (recognizing validity of state and federal laws allowing opt-outs in CBAs of minimum labor standards). As the Union, UNITE HERE Local 19, points out in its amicus brief, McCray's reading would nullify the opt-out provision altogether.

The essence of McCray's claim is that the employer is required to pay the City's minimum wage. Thus, he contends the opt-out contained in the CBA is not to be given effect. Of course McCray's complaint does not discuss the CBA because he wishes the claim to be litigated in state court, but the District Court correctly recognized that the dispute is actually about the CBA. We should similarly reject the pretense that this case is about state law.

When state law claims require analysis of the provisions in a CBA, the claims are preempted by the LMRA's exclusive federal jurisdiction. The District Court saw that the issue is not whether the complaint frames the case in terms of the CBA, but whether resolution of the claims will depend on analyzing the agreement. *Allis-Chalmers*, 471 U.S. at 220; *see also Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987) ("[W]hen a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim."). We faithfully followed this principle in *Kobold v. Good Samaritan Regional Medical Center*, 832 F.3d 1024, 1032 (9th Cir. 2016).

The majority cites to our Court's decisions in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1058 (9th Cir. 2007), and *Alaska Airlines Inc. v. Shurke*, No. 13-35574, 2018 WL 3636431, at *12 (9th Cir. Aug. 1, 2018) (en banc), in which we held that claims predicated on state law were not preempted, because they related to subjects that were independent of the CBA: travel time in *Burnside* and leave interchangeability in *Shurke*. *Shurke*, 2018 WL 3636431, at *2; *Burnside*, 491 F.3d at 1055. Such claims did not challenge the basic wage rate, a core subject of virtually all collective bargaining negotiations. Nor did those claims seek to replace any collectively bargained-for provision with inconsistent state law. McCray's claim here does both.

Section 301 of the LMRA provides that disputes regarding CBAs belong in federal court. CBAs are to be interpreted and applied in accordance with federal common law, a principle going back more than sixty years to *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). In this case the CBA contains a grievance procedure which McCray did not follow, and his complaint was properly dismissed.

I would affirm the District Court and I therefore respectfully dissent.